OPINION *Page 2 
{¶ 1} Defendant-Appellant, Justin M. Isbell, appeals from the judgment of the Sidney Municipal Court sentencing him to a three-day jail term, ordering a $250 fine, and imposing a one hundred eighty-day driver's license suspension. On appeal, Isbell argues that the trial court erred in denying his motion to suppress the results of his breath test because the State failed to prove substantial compliance with the Ohio Department of Health ("ODH") regulations requiring that the breath machine operator follow the manufacturer's operating instructions to not direct the subject to "blow hard" into the breath machine; that records of breath machine tests and operator proficiency examinations be maintained for three years; that the breath machine's operator manual be kept at the site of the breath tests; and, that the breath machine operator observe the suspect for twenty minutes prior to administering the breath test. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In September 2007, Isbell was arrested and cited with operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(d), a misdemeanor of the first degree, and with failure to operate his vehicle within marked lanes in violation of R.C. 4511.33, a minor misdemeanor. The arrest and citation arose from an incident during which Trooper Brad Johnson observed *Page 3 
Isbell driving forty-five m.p.h. and weaving in and out of his lane on southbound Interstate 75. After pulling over Isbell and noticing his slurred speech and the strong odor of alcohol emanating from the vehicle, he performed the Horizontal Gaze Nystagmus ("HGN") test, the walk and turn test, and the one leg stand test, the results of which evidenced Isbell's intoxication. After arresting Isbell and transporting him to the Shelby County Sheriff's Department, Trooper Johnson administered a breath test to Isbell, which showed his breath alcohol content to be in excess of the legal limit of .08 grams of alcohol per 210 liters of breath. Subsequently, Isbell pled not guilty to both charges.
 {¶ 3} In November 2007, Isbell filed a motion to suppress Trooper Johnson's observations, the results of the breath test and field sobriety tests, and any statements made by Isbell. Among the grounds asserted for suppression of the breath test were that the results of the breath machine calibration and subject tests were not maintained for at least three years, as required under Ohio Admin. Code 3701-53-01(A); that the operational manual was not maintained on file in the area where the breath tests were performed, as required by Ohio Admin. Code 701-53-01(B); that the breath test was conducted in direct violation of the BAC Datamaster operation manual, instructing the operator to not tell the subject to "blow hard" into the breath machine; and, that Trooper Johnson failed to observe *Page 4 
Isbell for twenty minutes prior to conducting the breath test, as required by the instrument operational checklist pursuant to Ohio Admin. Code 3701-53-02(C).
 {¶ 4} In January 2008, the trial court held a hearing on the motion to suppress, at which the following testimony was adduced.
 {¶ 5} Trooper Brad Johnson of the Ohio State Highway Patrol testified that he stopped Isbell on southbound Interstate 75 for suspicion of driving under the influence when he observed Isbell driving very slowly, weaving, and traveling outside of marked lanes; that upon approaching Isbell's vehicle and smelling the strong odor of alcohol on him, and observing his bloodshot eyes and slurred speech, he conducted an HGN, walk and turn, and one leg stand test; that, upon seeing multiple signs of intoxication through the tests, he arrested Isbell for operating a vehicle while under the influence of alcohol; that while continuously observing Isbell from the time he approached the vehicle until the time he arrested Isbell and placed him in the back of the police cruiser, he never saw Isbell place anything in his mouth; that, after a brief pause, he then drove Isbell to the police station and continued to observe him during the drive; that, although he was observing Isbell while driving, he was not able to watch him "every second of every minute" (motion to suppress hearing tr., p. 45) because the interior lights were out in the cruiser and he was watching traffic; but, that he had the camera in the cruiser turned around in order to monitor Isbell. Trooper Johnson continued *Page 5 
that when he arrived at the police station, he performed a breath analysis test on Isbell; that before he performed the test, he had observed Isbell for over forty-five minutes; that he is certified as a senior operator of the breath analysis machine; and, that the operating manuals for the machine are kept right next to it.
 {¶ 6} Trooper Johnson further testified that a checklist is followed when conducting a breath test; that the results of calibration checks are kept at the site of the machine; that he was not aware if there were repair and service records for the breath analysis machine because he did not believe the machine had been repaired or serviced; that the operator's manual for the breath analysis machine instructs the operator to not tell the subject to blow hard into the machine when obtaining a breath sample; and, that he never instructed Isbell to blow hard into the machine.
 {¶ 7} Trooper Christopher Ellison of the Ohio State Patrol testified that he is a certified senior operator of the breath analysis machine; that he is assigned the duties of calibrating and operating the machine; that the machine is calibrated every Sunday and the records for the last one hundred calibration tests are kept at the Shelby County Sheriff's office; that after the one hundredth test, the records are moved to the Piqua post of the Ohio State Patrol; and, that the records for the one hundred tests can cover any range of time periods, from a few months up to a year, depending on how long it took to conduct the tests. *Page 6 
 {¶ 8} Larry Dehus, a forensic scientist and expert witness for Isbell, testified that he was formerly employed by the Miami Valley Regional Crime Lab for ten years; that he has been involved in cases throughout Ohio and other states regarding procedures and policies concerning breath tests and breath testing instruments; that he observed the breath analysis machine at the Shelby County Sheriffs Department and found there to be an operator's manual and results of calibration tests kept at the site of the machine, but that he did not find any records relating to repair or maintenance of the machine; that the Department of Health regulations require proficiency tests to be conducted on each of the operators; that the regulations require the results of the proficiency tests to be kept at the site of the tests; that he did not observe these proficiency test records at the sheriffs department; and, that he went to the Piqua post of the Ohio State Patrol to request these records, but was denied access.
 {¶ 9} After the conclusion of all testimony, several exhibits were admitted, including the results of Isbell's breath analysis test, evidencing a blood alcohol content in excess of the legal limit, the operator guide and supervisor guide for the breath analysis machine, and a video recording of the traffic stop and breath test.
 {¶ 10} In March 2008, the trial court overruled Isbell's motion to suppress. In the judgment entry the trial court stated the following: *Page 7 
 B. The Defendant argues that the Trooper did not properly instruct the Defendant on how to blow his breath in the Datamaster.
 The Trooper told the Defendant "to take a really deep breath and blow hard into the machine." The Court finds that the Trooper substantially complied with the Department of Health Regulations in this regard and this branch is overruled.
 C. The Defendant maintains that the Trooper did not watch the Defendant for the mandatory twenty minutes prior to the breath test.
 Trooper Johnson testified that that he observed the Defendant consistently for at least twenty minutes before the breath test. Part of this observation time was while the Defendant was handcuffed with his hands behind his back in the seat of the patrol car. Testimony established that there was no one present to place any object in the Defendant's mouth nor was it possible for the Defendant to place any object in his mouth during this period. * * * [T]he Court finds that the Trooper substantially complied with the Department of Health Regulations in this regard.
 * * *
 E. Issue concerning keeping the records for three years at the testing site.
 The Court finds that the State has substantially complied with the Department of Health Regulations in this regard.
(March 2008 Judgment Entry, pp. 3-4).
 {¶ 11} Subsequently, Isbell withdrew his not guilty plea on all charges and entered a plea of no contest to the offense of operating a vehicle while under the influence of alcohol. Thereafter, the State dismissed the charge of failure to operate a vehicle within marked lanes, and the trial court sentenced Isbell to a *Page 8 
three-day jail term, imposed a $250 fine, and ordered a one hundred eighty-day license suspension.
 {¶ 12} It is from the trial court's denial of his motion to suppress that Isbell appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED IN FINDING THE STATE SUBSTANTIALLY COMPLIED WITH OHIO DEPARTMENT OF HEALTH REGULATIONS WHEN TROOPER JOHNSON DID NOT FOLLOW THE MANUFACTURER'S OPERATING INSTRUCTIONS FOR ADMINISTERING THE BAC DATAMASTER BREATH TEST.
 Assignment of Error No. II THE TRIAL COURT ERRED IN FINDING THAT THE STATE SUBSTANTIALLY COMPLIED WITH THE ODH RECORD KEEPING REQUIREMENT WHEN THREE YEARS OF RECORDS FOR THE BAC DATAMASTER WERE NOT RETAINED.
 Assignment of Error No. III THE TRIAL COURT ERRED IN FINDING THE STATE SUBSTANTIALLY COMPLIED WITH THE ODH OPERATIONAL CHECKLIST FOR CONDUCTING THE BREATH TEST, WHEN TROOPER JOHNSON FAILED TO OBSERVE APPELLANT FOR TWENTY MINUTES PRIOR TO THE BREATH TEST.
 {¶ 13} The following standard of review applies throughout. *Page 9 
 Standard of Review {¶ 14} Appellate review of a trial court's ruling on a motion to suppress evidence presents mixed questions of law and fact. State v.Dudli, 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶ 12, citing United Statesv. Martinez (C.A.11, 1992), 949 F.2d 1117. In reaching a decision on a motion to suppress, the trial court, as the trier of fact, judges the credibility of witnesses and determines the weight to be given to the evidence. State v. Johnson (2000), 137 Ohio App.3d 847, 850. Accordingly, the appellate court must accept the trial court's findings of facts that are supported by competent, credible evidence, State v.Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, citing State v.Fanning (1982), 1 Ohio St.3d 19, 20, but appellate review of the trial court's application of the law to the facts is de novo.Roberts, supra, citing State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, ¶ 8.
 {¶ 15} In seeking to suppress the results of a breath analysis test, the defendant must set forth an adequate basis for the motion. State v.Shindler, 70 Ohio St.3d 54, 58, 1994-Ohio-452. The motion must state the "* * * legal and factual bases with sufficient particularity to place the prosecutor and court on notice as to the issues contested." Id; Crim. R. 47. But, a mere technical challenge to a breath analysis test is sufficient even without case specific allegations. State *Page 10 v. Williams, 2d Dist. No. 16554, 1998 WL 214595, citing State v.Palmer, 2d Dist. No. 3085, 1995 WL 96859.
 {¶ 16} Once an adequate basis for the motion has been established, the State then bears the burden of proof to demonstrate substantial compliance with the ODH regulations. Xenia v. Wallace (1988),37 Ohio St.3d 216, 220. If the State demonstrates substantial compliance, the burden of proof then shifts to the defendant to overcome the presumption of admissibility and demonstrate that he was prejudiced by anything less than strict compliance. Burnside, 100 Ohio St.3d at 157.
 {¶ 17} In his motion to suppress, Isbell asserted, with sufficient particularity, the bases for suppression maintained in his appeal. Accordingly, we find the State was put on notice of its burden of proof to demonstrate substantial compliance with the ODH regulations.
 Assignment of Error No. I {¶ 18} In his first assignment of error, Isbell contends that the trial court erred in overruling his motion to suppress on the issue of Trooper Johnson failing to follow the ODH regulations in the administration of the breath test. Specifically, Isbell argues that Trooper Johnson directed him to "blow hard" into the breath instrument; that the instrument's operational guide instructs the operator to not tell the subject to blow hard into the machine; and, that because *Page 11 
Ohio Admin. Code 3701-53-01(B) requires the operational manual to be kept in the area where the breath tests are performed, the administrative code implicitly adopts the requirements of the operator's manual as law. We disagree.
 {¶ 19} All bodily substances collected to determine if an individual is operating a vehicle while under the influence of alcohol must be analyzed in accordance with methods approved by the director of health. R.C. 4511.19(D)(1)(b). Regulations promulgated by the director of health in Ohio Adm. Code 3701-53-01(B) provide that, "In the case of breath tests using an approved evidential breath testing instrument * * *, the operational manual provided by the instrument's manufacturer shall be on file in the area where the breath tests are performed." Additionally, Ohio Adm. Code 3701-53-02(C) provides that "[b]reath samples shall be analyzed according to the operational checklist for the instrument being used * * *."
 {¶ 20} In State v. Browning, 12th Dist. No. CA2007-10-118,2008-Ohio-2905, the defendant asserted that the State failed to demonstrate that there was substantial compliance with the ODH regulations in the administration of the breath analysis test because the police officer failed to conduct the test under the specific conditions set forth in the operator's manual. In finding that the State demonstrated substantial compliance with the ODH regulations and rejecting *Page 12 
defendant's argument, the Twelfth District stated that "[t]he plain language of the ODH regulations does not require strict compliance with the operator's manual."
 {¶ 21} Furthermore, in State v. Stout, 5th Dist. No. 07-CA-51,2008-Ohio-2397, the defendant sought to suppress the results of a breath analysis test on the grounds that the test was not conducted according to the proper procedures with regard to the instrument simulator checks as set forth in the breath machine's manufacturer's manual and the ODH, Bureau of Alcohol and Drug Testing Basic Training Manual. The Fifth District Court of Appeals, in upholding the trial court's denial of the suppression motion, found that the test was administered in substantial compliance with the ODH regulations and stated that, "[w]e find any other ancillary manuals, including the manufacturer's manual, are advisory only and not required unless and until adopted by the Ohio Department of Health." Id. at ¶ 120.
 {¶ 22} In this case, the operational manual for the breath machine, the BAC Datamaster Basic Operator Guide, states as follows:
 Position the subject to the right of the instrument. Communicate with the person taking the test. Give clear instructions so that the subject will understand how to provide an adequate breath sample. Do not tell the subject to blow `hard' .
(Emphasis added) (Defendant's Exhibit A, p. 6). While the trial court found that Trooper Johnson told Isbell "to take a really deep breath and blow hard into the machine," (March 2008 judgment entry, p. 3), it also found that Trooper Johnson *Page 13 
substantially complied with the ODH regulations. While we find no evidence in the record, including the videotape of the breath test, demonstrating that Trooper Johnson ever gave such an instruction, whether or not the instruction was given does not affect the outcome of our decision. Even if Trooper Johnson failed to follow the instructions given in the breath machine's operator guide, as found by the trial court, adherence to such instruction is not a requirement for admissibility of the breath test, as the ODH has neither adopted the operator guide as part of its regulations, nor has it issued a directive to not instruct a subject to "blow hard." Merely requiring that the operational manual be kept at the site where breath tests are being performed does not give rise to an implicit requirement that the operator must substantially comply with every provision in the manual. Thus, we find that the trial court did not err in overruling Isbell's motion to suppress on this issue.
 {¶ 23} Accordingly, Isbell's first assignment of error is overruled.
 Assignment of Error No. II {¶ 24} In his second assignment of error, Isbell contends that the trial court erred in overruling his motion to suppress because the State failed to demonstrate substantial compliance with the ODH regulation requirements that the results of breath machine tests and repairs, and breath machine operator proficiency tests be maintained for three years at the site of the machine, and that the machine's operational manual be kept where the breath tests are being performed. *Page 14 
 {¶ 25} Ohio Admin. Code 3701-53-01(A) provides that "[t]ests to determine the concentration of alcohol may be applied to blood, breath, urine, or other bodily substances. * * * The results of the tests shall be retained for not less than three years." Furthermore, Ohio Admin. Code 3701-53-04(E) states that "[r]esults of instrument checks, calibration checks and records of service and repairs shall be retained in accordance with paragraph (A) of rule 3701-53-01 of the Administrative Code." Finally, Ohio Admin. Code 3701-53-01(B) states that "the operational manual provided by the instrument's manufacturer shall be on file in the area where the breath tests are performed."
 {¶ 26} Here, Trooper Johnson testified that the original or copies of calibration checks are kept at the site of the breath machine; and that a copy of the machine operator's guide is also kept at the site of the machine. When asked whether any records of service or repairs on the machine are maintained, Trooper Johnson responded that he was not aware that the machine had ever been repaired for there to be such records.
 {¶ 27} Additionally, Trooper Ellison testified that the most recent one hundred tests are kept at the site of the breath machine; that all tests over one hundred are moved to the Piqua post of the Ohio State Patrol; and, that the time period those one hundred tests cover can be either a year or just a few months. *Page 15 
 {¶ 28} Also, Larry Dehus, Isbell's expert witness, testified that, upon inspecting the area where the breath machine is kept, he discovered the operator's manual for the machine and the results of machine calibration tests and prior breath tests conducted on other subjects.
 {¶ 29} Based upon the testimony presented, we find that the State demonstrated substantial compliance with Ohio Admin. Code 701-53-01(B)'s requirement that the breath machine's operator's manual be kept in the area where breath tests are conducted. Additionally, we find that the State demonstrated substantial compliance with the requirement that subject tests and calibration tests be maintained for three years pursuant to Ohio Admin. Code 3701-53-01(A) and3701-53-04(E). While Trooper Ellison could only testify that the most recent one hundred tests are kept at the site of the machine, he also testified that all further records are kept at a separate location, and, despite Isbell's assertion, there is no requirement that the three years of records be maintained at the site of the machine.
 {¶ 30} Furthermore, we find that the State also demonstrated substantial compliance with the requirement in Ohio Admin. Code 3701-5
3-04(E) that records of service and repairs on the machine be kept for three years. While Dehus testified that he did not see any service records at the site of the machine, *Page 16 
Trooper Johnson testified that he was not aware of any repairs conducted on the machine that would warrant a keeping of records.
 {¶ 31} Finally, as to Isbell's argument that the breath test should have been suppressed because records of proficiency examinations were not maintained at the site of the breath machine, and because Dehus was denied access to review all records, we find no merit. First, Isbell cites to no authority for the proposition that proficiency examination records must be maintained, other than the testimony of his expert presented at trial. Ohio Admin. Code 3701-53-08(C) discusses the proficiency examination requirement for breath machine operators, and a record keeping requirement is not contained therein. Secondly, Isbell also cites to no authority for his proposition that the result of a breath test must be suppressed when access to records is not granted and no motion for an order to produce the documents was filed. In any event, such authority would be immaterial here, as Dehus was given access to the multiple calibration and subject test records kept at the site of the breath machine.
 {¶ 32} Accordingly, Isbell's second assignment of error is overruled.
 Assignment of Error No. III {¶ 33} In his third assignment of error, Isbell argues that the trial court erred in overruling his motion to suppress the results of the breath test because the State failed to demonstrate substantial compliance with the operational checklist under *Page 17 
Ohio Admin. Code 3701-53-02(C), requiring the suspect to be observed for a continuous twenty minute period prior to administration of the breath test. Specifically, Isbell asserts that, even though Trooper Johnson testified that he observed him for over twenty minutes, the observation requirement is not satisfied because a portion of that observation time included a period when Isbell was in the back of the dark police cruiser with Trooper Johnson focused on driving and not on him. We disagree.
 {¶ 34} Ohio Admin. Code 3701-53-02(C) provides that "[b]reath samples shall be analyzed according to the operational checklist for the instrument being used." One item on the checklist requires observation of the subject for twenty minutes prior to conducting a breath test. SeeVillage of Bolivar v. Dick, 76 Ohio St.3d 216, 218, 1996-Ohio-409. The purpose of the observation rule is to require positive evidence that, during the twenty minutes prior to the test, the accused did not ingest some material which might produce an inaccurate test result. State v.Siegal, 138 Ohio App.3d 562, 568, 2000-Ohio-1747, citing State v.Steele (1977), 52 Ohio St.2d 187. In satisfying the twenty minute observation requirement, the State need not demonstrate that `"the subject was constantly within his gaze, but only that during the relevant period the subject was kept in such a location or condition or under such circumstances that one may reasonably infer that his ingestion of any material without the knowledge of the witness is unlikely or *Page 18 
improbable."' Siegal, 138 Ohio App.3d at 569, quoting State v.Adams (1992), 73 Ohio App.3d 735, 740. In order to overcome the inference that ingestion of any material is unlikely or improbable, "the accused must show that he or she did, in fact, ingest some material during the twenty-minute period. The `mere assertion that ingestion was hypothetically possible ought not to vitiate the observation period foundational fact so as to render the breathalyzer test results inadmissible.'" Adams, 73 Ohio App.3d at 740, quoting Steele,52 Ohio St.2d at 192.
 {¶ 35} Here, Trooper Johnson testified that he observed Isbell for over forty-five minutes prior to conducting the breath test; that part of that observation period included the time that Isbell was in the back seat of the police cruiser while he was driving; that while he was driving, he did not observe Isbell continuously, but that he had the camera positioned on Isbell in order to conduct some observation; that he never asked Isbell if he had anything in his mouth, and he never looked into Isbell's mouth; and, that while Isbell was in the police cruiser, his hands were handcuffed behind his back and no one else was present to hand him any substances.
 {¶ 36} Although there were periods of time during which Trooper Johnson might not have been continuously observing Isbell, we find that the nature of the circumstances rendered it highly unlikely that he could have ingested a foreign substance without Trooper Johnson's knowledge, as Isbell's hands were *Page 19 
handcuffed behind his back, he was in the police cruiser by himself, and Trooper Johnson conducted some observation of him. Furthermore, Isbell presented no evidence that he actually ingested or regurgitated any material, thereby failing to rebut the inference that the breath test was unaffected by some foreign substance. As such, we find the trial court did not err in finding that the State substantially complied with the twenty minute observation requirement.
 {¶ 37} Accordingly, Isbell's third assignment of error is overruled.
 {¶ 38} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur. *Page 1