The STATE of Ohio, Appellee,

v.

HOLLY et al., Appellants.

[Cite as *State v. Holly* (1999), 135 Ohio App.3d 512.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

Nos. CA99–01–002, CA99–02–020.

Decided Nov. 8, 1999.

*Donald W. White,* Clermont County Prosecuting Attorney, and *David H. Hoffmann,* Assistant Prosecuting Attorney, for appellee.

*Rosenhoffer, Nichols & Schwartz* and *Jeffrey S. Schwartz,* for appellant Kimberly R. Holly.

*Charles J. Tekulve,* for appellant Andrew M. Riffe.

POWELL, Presiding Judge.

In this consolidated appeal, defendants-appellants, Kimberly R. Holly and Andrew M. Riffe, appeal their convictions in the Clermont County Municipal Court for driving under the influence of alcohol ("DUI"). Because we find that the trial court correctly denied appellants' motions to suppress, we affirm.

Appellants were arrested and charged on separate occasions with driving under the influence of alcohol in violation of R.C. 4511.19(A)(1) and driving with a

prohibited breath-alcohol concentration in violation of R.C. 4511.19(A)(3).[1] Upon their arrests, both appellants consented to breath-alcohol tests administered by officers of the Ohio State Highway Patrol. The results of Riffe's test indicated that he had a concentration of .172 grams of alcohol per two hundred ten liters of breath; Holly's test results indicated that she had a concentration of .130 grams of alcohol per two hundred ten liters of breath. The highway patrol officers tested appellants on machines that were checked for accuracy with an instrument check solution comprised of ethyl alcohol and water. In each case, the instrument check solution came from Batch No. 97220, which had been approved by the Ohio Department of Health ("ODH").

Appellants filed motions to suppress the results of their breath-alcohol tests, asserting that the tests were not reliable as a result of ODH protocol for certifying the solutions used to check breath-alcohol testing equipment. Appellants essentially asserted that the ODH procedures were inadequate to ensure reliable breath-alcohol test results.

The trial court held a hearing on appellants' motions to suppress on February 25, 1998. All of the parties stipulated that Dr. Craig A. Sutheimer, Deputy Director, Chief Toxicologist and Chief of the alcohol testing program for ODH, had cast doubt on the reliability of breath-alcohol test values in his prior testimony in unrelated cases.[2] The parties further stipulated that Sutheimer's prior testimony in those cases would be admitted into evidence for the trial court's consideration.

On October 21, 1998, the trial court issued a thorough decision denying appellants' motions. The court found that the director of health substantially complied with ODH regulations and did not abuse his discretion in approving instrument check solution Batch No. 97220. The trial court also found appellants' breath-alcohol tests were reliable. The court concluded that appellants would not be prejudiced by admission of the test results into evidence.

Riffe and Holly each pled no contest to a violation of R.C. 4511.19(A)(3). Both appellants were found guilty as charged and sentenced accordingly. Both filed a timely appeal. Because appellants present identical issues and arguments on appeal, their cases have been consolidated.

In a single assignment of error, appellants contend that the trial court erred by overruling their motions to suppress the results of their breath-alcohol tests.

---

1. Riffe was arrested on November 20, 1997. Holly was arrested on January 10, 1998.

2. Dr. Sutheimer testified in *State v. Beardsley* (Oct. 20, 1997), Marietta Cty. M.C. No. 97–TRC–4176, unreported. In addition, he provided deposition testimony on December 8, 1997 and January 8, 1998 in *State v. Harris* (1998), Franklin Cty. M.C. No. M9709TFC–142093.

Appellants argue that the director of health abused his discretion when he approved instrument check solution Batch No. 97220, because the manufacturers of the solutions determined the target values of the batches instead of ODH. Appellants contend that the ODH process for approving instrument check solutions creates unreliable breath-alcohol test results.

An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by substantial credible evidence. *Maumee v. Johnson* (1993), 90 Ohio App.3d 169, 171, 628 N.E.2d 115, 116; *State v. Emerson* (Mar. 6, 1995), Clermont App. No. CA94–11–093, unreported, 1995 WL 90183. A trial court serves as the trier of fact in a suppression hearing and must weigh the evidence and judge the credibility of witnesses. *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584–585. When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies upon the trial court's ability to assess the credibility of witnesses, and independently determines "without deference to the trial court, whether the court has applied the appropriate legal standard." *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036.

The admissibility of breath-alcohol test results depends on whether the state has substantially complied with regulations promulgated by ODH. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32, 34; *State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 22 OBR 461, 462–464, 490 N.E.2d 902, 904–905. Once the prosecution demonstrates substantial compliance, the defendant must show that he would be prejudiced by failure to strictly comply with the regulations. *Plummer* at syllabus. If the defendant is unable to show prejudice, then the results of the breath-test are admissible. See *id.*

The director of health has broad authority to determine the methods of ascertaining the amount of alcohol in a person's body. R.C. 3701.143 requires that:

"The director of health determine, or cause to be determined, techniques or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, urine, breath, or other bodily substance. The director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses."

According to regulations promulgated by the director of health, instrument checks on breath testing instruments must be performed at least once every seven days. Ohio Adm.Code 3701–53–04(A). The breath-testing instruments "shall be checked using an instrument check solution containing ethyl alcohol

approved by the director of health. An instrument check is valid when the result of the instrument check is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that instrument check solution." Ohio Adm.Code 3701–53–04(A)(1).

ODH does not manufacture the solutions used to check breath-testing instruments. Independent manufacturers produce the solutions in batches, usually containing between one thousand five hundred and two thousand bottles. The manufacturers certify to ODH the quantity of alcohol present in each batch solution. The amount of alcohol in the solution is known as the target value.

Each manufacturer sends four bottles of solution from a batch to ODH for verification of the stated target value. The ODH laboratory conducts four separate tests on each of the four bottles. The results of the sixteen tests are then averaged together to establish a "grand mean" for the batch. If the ODH grand mean is within five percent of the manufacturer's stated target value, the director of health issues a certificate of approval for the batch.[3] ODH testing is only a quality control measure to verify the manufacturer's stated target value for the solution. Ohio Adm.Code 3701–53–04(A)(1).

■ While the administrative regulations state that the director of health has a duty to approve the target value of each batch of instrument check solution, there are no regulations concerning whether, or how, the director should verify or establish the target value. Although there are no regulations concerning the establishment of the target values, the director of health may not abuse his discretion in approving a batch solution. See State v. Brockway (1981), 2 Ohio App.3d 227, 2 OBR 247, 441 N.E.2d 602, paragraph three of the syllabus ("[A]bsent an abuse of discretion, the court may not substitute its judgment as to techniques or devices deemed reliable by the director of Health."); State v. Kimpton (May 13, 1999), Franklin App. No. 98–AP–1048, unreported, 1999 WL 333310. Abuse of discretion connotes more than an error of law or judgment; it implies that the director's attitude is unreasonable, arbitrary, or unconscionable. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

■ Stiefel Laboratories, Inc. ("Stiefel") manufactured Batch No. 97220. According to Sutheimer's testimony, when the director of health approved Batch

---

3. By establishing a grand mean and comparing it to the manufacturer's stated target value for the batch solution, the ODH is essentially testing the truth of the manufacturer's target value. According to Sutheimer, the ODH allows for a five percent difference between its grand mean and the manufacturer's target value since five percent is generally the acceptable limit of inter-laboratory variations. This standard should not be confused with the ODH regulation requiring that checks of breath-testing machines must be accurate at or within five one-thousandths (0.005) grams per two hundred liters of the target value for that instrument check solution. See Ohio Adm.Code 3701–53–04(A)(1).

No. 97220, no one at ODH had any personal knowledge regarding the process Stiefel used to establish a batch's target value. Sutheimer visited Stiefel on November 21, 1997, and learned how the company determines target values for batch solutions. To calculate the target value of a solution, Stiefel tests a total of three bottles of the packaged product randomly selected from the beginning, middle, and end of the packing line. Stiefel sends two additional random bottles to Adirondack Laboratories for quality control or "referee" testing to confirm whether the target value for the batch is accurate.

Sutheimer, in his prior trial testimony, stated that he believed the testing performed by Stiefel was inadequate to determine the target value of the batch solutions. Based on his experience in forensic science, Sutheimer indicated that a target value should be determined by testing a quantity of bottles equal to the square root of the batch size or twenty bottles, whichever is smaller. After consulting with statisticians from Ohio State University, Sutheimer concluded that testing seven or eight bottles would be "minimally acceptable to set a theoretical true target value." In either case, Sutheimer concluded that a single organization should conduct the testing so that the target value would be set using a scientifically acceptable quantity of samples.

Because Stiefel ascertained the target value for Batch No. 97220 by testing only three bottles, Sutheimer located ten additional bottles and sent them back to Stiefel for further testing. The subsequent testing revealed that Stiefel's original stated target value of .099 was accurate. This additional testing also gave Sutheimer the opportunity to very critically audit Stiefel's operation and see if there was any variation from one analysis to another. Ultimately, since Stiefel was able to reproduce the same test results on Batch No. 97220, Sutheimer felt very confident that the target values generated by Stiefel were accurate. Sutheimer did not recommend that ODH revoke its previous approval of instrument check solution Batch No. 97220.

The director of health issued a certificate of approval for Batch No. 97220 based on information that was reasonably available to him after ODH quality control testing confirmed the target value of the batch. There is no ODH regulation that addresses the establishment of the target values for instrument check solutions, but R.C. 3701.143 grants the director of health the authority to determine or cause to be determined techniques and methods for breath-alcohol tests.

In this case, when it became apparent to ODH that Stiefel did not test a statistically valid number of bottles to support the stated target value, Sutheimer initiated an investigation. Subsequent testing confirmed that Stiefel assigned a target value of .099 to Batch No. 97220. The state has demonstrated substantial, if not literal, compliance with ODH regulations. Therefore, it was not abuse of

discretion for the director of health to approve Batch No. 97220 when ODH testing confirmed the manufacturer's target value of .099.

Appellants consented to breath-alcohol tests on machines that were checked using instrument check solution Batch No. 97220. Riffe's test indicated that he had a concentration of .172 grams of alcohol per two hundred ten liters of breath; Holly's test results indicated that she had a concentration of alcohol of .130 grams per two hundred ten liters of breath. Appellants were found guilty of violating R.C. 4511.19(A)(3), which prohibits operation of any vehicle if "the person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath." Appellants' test results were administered in compliance with ODH regulations and, as such, they bear indicia of reliability and accuracy. Thus, appellants have suffered no prejudice that would require the suppression of their breath-test results.[4] The assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG and WALSH, JJ., concur.

---

4. We note similar appeals regarding Batch No. 97220 have been brought in other appellate districts. Those courts have reached conclusions similar to the one we reach today in this case. See, *e.g., State v. Dunn* (Sept. 14, 1999), Ross App. No. 98CA2468, unreported, 1999 WL 731803; *State v. Walton* (June 30, 1999), Fairfield App. No. 98 CA 00046, unreported, 1999 WL 547580; *State v. Manzanares* (Apr. 16, 1999), Wood App. No. WD–98–033, unreported, 1999 WL 247125; *State v. Broerman* (1999), 132 Ohio App.3d 134, 724 N.E.2d 522; *State v. Miller* (Dec. 15, 1988), Marion App. No. 9–98–42, unreported, 1998 WL 876812.