[Cite as *State v. Kitzler*, 2011-Ohio-5444.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY


STATE OF OHIO,

      PLAINTIFF-APPELLEE,                        CASE NO.  16-11-03

      v.

JOHN C. KITZLER,                            O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Wyandot County Common Pleas Court
Trial Court No. 10-CR-0050

**Judgment Affirmed**

**Date of Decision:   October 24, 2011**


APPEARANCES:

    *Todd A. Workman*  **for Appellant**

    *Douglas D. Rowland*  **for Appellee**

**WILLAMOWSKI, J.**

{**¶1**} Defendant-appellant John C. Kitzler ("Kitzler") brings this appeal from the judgment of the Court of Common Pleas of Wyandot County denying his motion to suppress the results of his blood alcohol tests. For the reasons set forth below, the judgment is affirmed.

{**¶2**} On August 23, 2010, Sergeant Kerwin Wiseley ("Wiseley") of the Wyandot County Sheriff's Office stopped Kitzler for failing to dim his headlights while approaching another vehicle and for a marked lanes violation. Tr. 7-9. Upon speaking with Kitzler, Wiseley detected a strong odor of alcohol emanating from the vehicle. Tr. 13. Wiseley testified that Kitzler's speech was slurred and that his eyes were glassy and bloodshot. Id. When asked, Kitzler admitted that he had drank six beers that night. Id. Wiseley then determined that Kitzler did not have a valid operator's license and arrested him. Tr. 23. Since he was already under arrest Wiseley also asked Kitzler if he consented to take the field sobriety tests without a lawyer present and Kitzler agreed. Tr. 24. Kitzler then performed some field sobriety tests including the horizontal gaze nystagmus test. Tr. 26. This test gave six out of six possible clues that Kitzler was intoxicated. Tr. 37. At that time, Wiseley also arrested Kitzler for operating a motor vehicle while intoxicated. Tr. 38. Wiseley then transported Kitzler to the Sheriff's Office. Tr. 39.

**{¶3}** Once at the Sheriff's Office, Kitzler submitted to a test on the Intoxilyzer 8000. Id. This machine requires that two different samples be given and that the two samples be within a certain tolerance deviation for the test to be valid. Tr. 45. Kitzler's samples were not within the tolerance, so the test was deemed invalid. Tr. 48. For the 20 minutes prior to taking the test, Kitzler was observed and did not ingest any substance. Tr. 49. While waiting for the results to print, Kitzler was taken to the bathroom and upon exiting, took a drink of water from the fountain at 12:27 in the morning. Tr. 50, 52. Kitzler was then asked to submit to a test on the BAC Datamaster and consented to do so. Tr. 53. Fourteen minutes and thirty-eight seconds later, the test was given. Tr. 56. The test result was .239 grams of alcohol per 210 liters of breath. Tr. 62.

**{¶4}** On September 15, 2010, the Wyandot Grand Jury indicted Kitzler for 1) operating a motor vehicle while under the influence of alcohol with prior convictions for doing so in violation of R.C. 4511.19(A)(1)(a) and (G)(1)(e), a felony of the third degree and 2) operating a motor vehicle while under the influence of alcohol in excess of .17 gram of alcohol per two hundred liters of breath with prior convictions for doing so in violation of R.C. 4511.19(A)(1)(h) and (G)(1)(e), a felony of the third degree. Kitzler entered a plea of not guilty. On October 20, 2010, Kitzler filed a motion to suppress the evidence. A hearing on the motion was held on November 2, 2010. The trial court overruled on the

motion on December 12, 2010. On January 25, 2011, a jury trial was held. The jury returned a verdict of guilty on both counts of the indictment. On February 2, 2011, the trial court entered a single judgment of conviction and sentenced Kitzler to five years in prison. Kitzler appeals from this judgment and raises the following assignments of error.

### First Assignment of Error

**The trial court erred when it denied [Kitzler's] motion to suppress when officers failed to observe [Kitzler] for at least twenty minutes prior to testing, [Kitzler] ingested a foreign substance, and no evidence was adduced as to how the substance would affect the BAC Datamaster.**

### Second Assignment of Error

**The trial court erred when it denied [Kitzler's] motion to suppress when [Kitzler] submitted two separate samples via the Intoxilyzer 8000 that did not correlate within .020 and therefore produced an "invalid test".**

### Third Assignment of Error

**The trial court erred when it denied [Kitzler's] motion to suppress when officers failed to comply with the Department of Health regulations when testing an individual's blood alcohol concentration via the Intoxilyzer 8000.**

### Fourth Assignment of Error

**The trial court erred when it denied [Kitzler's] motion to suppress the field sobriety Horizontal Gaze Nystagmus Test conducted by the Wyandot County Sheriff's Office as no evidence was submitted demonstrating substantial compliance with any reliable field sobriety testing standard.**

{¶5} All of the assignments of error allege that the trial court erred by denying the motion to suppress.

> **When we consider a trial court's denial of a motion to suppress, this court's standard of review is divided into two parts. In *State v. Lloyd* (1998), 126 Ohio App.3d 94, 100, 709 N.E.2d 913, the court stated: "[O]ur standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9 citing *Tallmadege v. McCoy* (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802. * * * [T]his is the appropriate standard because 'in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard."**

*State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, ¶22, 907 N.E.2d 1254. See also *State v. Skiver*, 3d Dist. No. 11-09-07, 2010-Ohio-979. The burden of proof in a motion to suppress the results of a blood alcohol test is on the State once the defendant has made an issue of the legality of the test. *State v. Siegel*, 138 Ohio App.3d 562, 568-69, 2000-Ohio-1747, 741 N.E.2d 938. Once the accused has raised the issue, the burden is on the State to demonstrate that either the alleged errors did not occur or, if they did occur, that they had no effect on the test results. Id.

{¶6} In the first assignment of error, Kitzler claims that the trial court erred because the officers failed to observe him for 20 minutes prior to the testing and that he had ingested water before taking the blood alcohol test on the BAC Datamaster. The Ohio Department of Health test instructions impose a specific requirement that the subject be observed for 20 minutes before the test to insure that there is no oral intake of any material. Tr. 132 and Ohio Adm.Code 3107-53.02(D). The sole purpose of the observation period is to prevent the oral intake of any material which might affect the test results. *Bolivar v. Dick* (1996), 76 Ohio St.3d 216, 667 N.E.2d 18.

{¶7} Here, the State concedes that within the 20 minutes immediately prior to the test, Kitzler took a drink of water. Thus the State has the burden of proving that the drink did not affect the results. *Siegel*, supra. In *Siegel*, this court held that the results of the test should have been suppressed when the evidence was that the defendant ingested large quantities of water during the twenty-minute observation period. "[T]he state did not present any evidence that ingestion of large quantities of water during the twenty-minute observation period before the BAC test will not affect (sic) the results." Id. at 569. Based upon the State's failure to present the evidence, this court determined as a matter of law that the results should have been suppressed. Id.

{¶8} Unlike the prosecution in *Siegel*, the State in this case presented the testimony of John Kucmanic ("Kucmanic") who is the forensic toxicologist for the Ohio Department of Health. Tr. 124. Kucmanic testified that the ingestion of water would not affect the test. Tr. 133. With this testimony, the facts are sufficiently different from those in *Siegel* to distinguish the holding in *Siegel*. This court in *Siegel* even indicated that the result might have been different if the State had presented evidence that the test results were not affected by the ingestion of water. *Siegel*, supra at 569. Since the State did present evidence that the ingestion of the water did not affect the test results, Kitzler was not prejudiced by the failure of the State to strictly comply with the testing procedures. The first assignment of error is overruled.

{¶9} In the second assignment of error, Kitlzer alleges that the trial court erred in permitting the admission of the test results from the Intoxilyzer 8000 that were listed as invalid. Kitzler supports his argument by citing this court to *State v. Zamorski* (2000), 141 Ohio App.3d 521, 752 N.E.2d 288. In *Zamorski*, the court held that the reading observed by an officer during an invalid test is not relevant and is thus inadmissible. Id. at 524.

> **An invalid test, without some explanation to the contrary, is, by the plain meaning of the word "invalid," simply without basis in fact. Evidence without a basis in fact is irrelevant. Without a detailed explanation and justification for how a visual display during an invalid test is relevant, which would necessarily**

> **involve expert testimony, any reference to that visual display is irrelevant and therefore inadmissible.**

Id. at 524-25.

{¶10} Here, the State wanted to use the readings obtained during the invalid test. Unlike the prosecution in *Zamorski*, the State in this case presented expert testimony through Kucmanic that explained why the test was labeled invalid by the machine. He testified that the deviation between the two readings was higher than permitted, so the machine classified the results as invalid. Tr. 142. He also testified to a reasonable degree of scientific certainty that the results of the test were accurate despite the label of invalid. Id. This testimony was based upon the correlation between the three samples taken.[1] Given this evidence, the trial court could reasonably conclude that the readings were valid even though they fell outside of the deviation range. Thus, the trial court did not abuse its discretion by denying the motion to suppress the test results from the Intoxilyzer 8000. The second assignment of error is overruled.

{¶11} Kitzler claims in the third assignment of error that the test results of the Intoxilyzer 8000 should have been suppressed because Wiseley did not follow the instructions to retest on the Intoxilyzer 8000. Specifically Kitzler claims that Wiseley erred by not retesting him on the Intoxilyzer 8000 when the first test came

---

[1] Two samples were taken for the Intoxilyzer 8000 and one sample for the BAC Datamaster.

back invalid. There is no dispute that the most proper procedure would have been for Kitzler to be retested on the machine as set forth in the instructions. However, there is no evidence that Kitzler was prejudiced in any way by Wiseley's testing him on a different machine instead of retesting him on the Intoxilyer 8000. Kitzler does not point to any error either. Thus any error would be harmless and not cause for reversing the judgment of the trial court. Crim.R. 52(A). Without any showing of prejudice, the third assignment of error must be overruled.

{¶12} Finally, Kitlzer alleges that the trial court erred by failing to suppress the field sobriety Horizontal Gaze Nystagmus Test ("HGN") performed by Wiseley. Kitzler claims that Wiseley did not demonstrate that his testing procedures complied with the standards.

> **In any criminal prosecution * * * for a violation of division (A) or (B) of this section * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:**
>
> **(i) The officer may testify concerning the results of the field sobriety test so administered.**

**(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution * * *.**

**(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.**

R.C. 4511.19(D)(4)(b).

{¶13} The issue of what evidence is required to set forth the standards for field sobriety tests has been addressed by numerous courts in Ohio. The general consensus has been that if no evidence of a reliable field sobriety testing standard is introduced by the State at the suppression hearing, either via testimony or through the introduction of the applicable manual, the State has failed to meet its burden of demonstrating compliance. See *State v. Bish*, 191 Ohio App.3d 661, 2010-Ohio-6604, 947 N.E.2d 257; *State v. Broom*, 2d Dist. No. 22468, 2008-Ohio-5160 (holding that failure to present any evidence that test was done in compliance with NHTSA standards required suppression of test results); *State v. Perkins*, 10th Dist. No. 07AP-924, 2008-Ohio-5060 (holding that suppression not necessary when officer testified as to training, standards, procedure used, and that he had complied with the standards); *State v. Brown*, 166 Ohio App.3d 638, 2006-Ohio-1172, 852 N.E.2d 1228 (holding that failure of the state to present evidence

of NHTSA standards required suppression of field sobriety test results); *State v. Sunday*, 9th Dist. No. 22917, 2006-Ohio-2984 (holding that failure of state to show compliance with standards requires suppression of test results); *Gates Mills v. Mace*, 8th Dist. No. 84826, 2005-Ohio-2191 (holding that city had the burden of proving that officer complied with testing standards); *State v. Ryan*, 5th Dist. No. 02-CA-00095, 2003-Ohio-2803 (holding that the state bears the burden of showing how the tests were performed and that they conformed with the standards); and *State v. Nickelson* (July 21, 2001), 6th Dist. No. H-00-036 (holding that the state must prove that tests were completed in compliance with the standards).

> **It is only logical that in order to prove substantial compliance with a given standard, there must be at minimum some evidence of the applicable standard for comparative purposes. Accordingly, where the suppression motion raises specific challenges to the field sobriety tests, the state must produce some evidence of the testing standards, be it through testimony or via introduction of the NHTSA or other similar manual or both.**

> **Applying that test to the instant case, the state fell short of these requirements. Trooper Wolfe testified about how he performed the various field sobriety tests and opined that Bish failed them. However, the trooper never testified about the NHTSA standards or any other credible, reliable field sobriety testing standard. Nor did the state introduce the NHTSA manual or the like as an exhibit at trial. Testimony about *how* the trooper performed the field sobriety tests presents only half the picture. It is impossible to tell from the evidence presented during the suppression hearing whether the trooper administered the field**

> **sobriety tests in substantial compliance with the NHTSA or any other set of standards as required by R.C. 4511.19(D)(4)(b).**

*Bish*, supra at ¶27-28.

{¶14} Here, Kitzler specifically raised the issue of the field sobriety tests in his motion to suppress. Wiseley testified that HGN is a standardized field sobriety test. Tr. 21. He then testified that he had completed training and been certified to perform the HGN. Tr. 22. Over his ten years since certification, Wiseley had performed between 100 and 300 HGN tests. Tr. Id. Wiseley also explained to the court how he administered the test and the factors for which he was looking to determine impairment. Tr. 22, 26-38. In addition to Wiseley's testimony, the State presented the videotape showing the testing. Wiseley testified that he observed six clues of impairment out of a possible six clues. Tr. 38. However, contrary to the finding made by the trial court, at no time did Wiseley testify as to what the standards were or even that he was in compliance with the standards. As stated in *Bish*, testimony about how the tests were performed is only half of what needs to be proven. Thus, the State did not meet its burden of proof as to the field sobriety tests and they should have been suppressed.

{¶15} Although the field sobriety tests should have been suppressed, the discussion does not end there. The next question is whether the error is prejudicial. *State v. Phillips*, 7th Dist. No. 08-MO-6, 2010-Ohio-1547. "When a

trial court erroneously fails to suppress the results of field sobriety tests, if ample evidence exists to support the arrest and conviction, this error is harmless." *State v. Matus*, 6th Dist. No. WD-06-072, 2008-Ohio-377, ¶27.

> **While field sobriety tests must be administered in [substantial] compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded for lack of [substantial] compliance.**

*State v. Homan* (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (superseded by statute on other grounds a set forth in R.C. 4511.19(D)(4)(b)). In *Homan*, the Ohio Supreme Court held that erratic driving, the driver's red and glassy eyes, the smell of alcohol on the driver's breath, and the driver's admission that he had consumed alcohol was sufficient to provide probable cause to arrest the defendant even without the field sobriety test results. Id.

{¶16} Wiseley testified that he noticed Kitzler for failing to dim his lights and driving close to the center line. Tr. 9. Wiseley then turned to follow Kitzler and observed him weaving between the left and right sides of his lane, then crossing and straddling the center line. Id. When speaking with Kitzler, Wiseley smelled a strong odor of alcohol and noted that his speech was slurred and slow. Tr. 13. He learned that Kitzler did not have a valid operator's license. Id. Once

he was able to get a good look at Kitzler's eyes, Wiseley noted that they were bloodshot and glassy. Id. Wiseley asked Kitzler if he had been drinking and Kitzler admitted to drinking six beers that evening. Id. Given the fact that Kitzler did not have a license, was driving erratically, smelled strongly of alcohol, had slow and slurred speech, had bloodshot and glassy eyes, and admitted to drinking six beers, Wiseley had probable cause to arrest Kitzler for driving under the influence of alcohol. Thus, he was not prejudiced by the trial court's failure to suppress the field sobriety test results.

{¶17} Additionally, although Wiseley went to trial, he was not prejudiced by the use of the field sobriety test results there either. For all of the above reasons, the jury could reasonably have found him guilty of driving while under the influence of alcohol. Even if it did affect the outcome of the conviction on that count, the second count of the indictment claimed that he was driving with more than the legal limit of alcohol in his system. The uncontroverted evidence was that he was. The two counts merged for conviction and sentencing. Sentencing Entry. Therefore, Kitzler suffered no prejudice and any error was harmless. For this reason, the fourth assignment of error is overruled.

{¶18} Having found no error prejudicial to the defendant, the judgment of the Court of Common Pleas of Wyandot County is affirmed.

*Judgment Affirmed*

**ROGERS, P.J., concurs.**

**SHAW, J., concurs in Judgment Only.**

**/jlr**