[Cite as *State v. Aldridge*, 2014-Ohio-4537.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,            CASE NO.  9-13-54

     v.

ANASARIA ALDRIDGE,             O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Marion Municipal Court
Trial Court No. TRC-13-1745

Judgment Affirmed

Date of Decision:  October 14, 2014

APPEARANCES:

    *Brian G. Jones*  for Appellant

    *Steven E. Chaffin*  for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Anasaria Aldridge ("Aldridge") brings this appeal from the judgment of the Municipal Court in Marion County, Ohio, denying her motion to suppress and finding her guilty of OVI (operation of a motor vehicle while intoxicated). For the reasons that follow, we affirm the trial court's judgment.

### Facts and Procedural History

{¶2} On March 13, 2013, Aldridge was observed by Trooper Keith Smith ("Trooper Smith"), operating her vehicle in Marion Township, Ohio. Trooper Smith noticed that when Aldridge's vehicle "stopped, it changed lanes momentarily. It was halfway past the stop bar." (Mot. Suppress Hr'g Tr. ("Tr.") at 55.) Trooper Smith followed the vehicle and observed it as it failed to stop at a stop sign. (*Id.*) Trooper Smith initiated a traffic stop as Aldridge was pulling into a residential parking lot. (*Id.* at 56, 96.) According to Trooper Smith, Aldridge pulled into a parking space "without any trouble" and exited the vehicle without any problems. (*Id.* at 96, 109.)

{¶3} Upon initial contact with Aldridge's vehicle, Trooper Smith noticed "a strong odor of an alcoholic beverage coming from the vehicle itself." (*Id.* at 57.) There were passengers in the car and Trooper Smith asked Aldridge to exit the vehicle in order to determine whether the odor of an alcoholic beverage was

coming from her. (*Id.* at 58.) Trooper Smith noticed that although Aldridge's speech was "relatively normal," her eyes were bloodshot and glassy. (*Id.* at 58-59.) He asked Aldridge to exit the vehicle and noticed that Aldridge did not have any problems exiting the car. (*Id.* at 60.) Trooper Smith then asked Aldridge to accompany him to the patrol vehicle, where he again detected an odor of alcoholic beverage, this time coming from Aldridge herself. (*Id.* at 61-62.) Aldridge admitted to consuming "two Bud Lights at home." (*Id.* at 62.)

{¶4} Trooper Smith asked Aldridge to perform field sobriety tests, including the horizontal gaze nystagmus ("HGN"), walk and turn, and one leg stand. After observing Aldridge's performance on the tests, Trooper Smith "made a determination to place [Aldridge] under arrest for operating a vehicle under the influence." (*Id.* at 84.) Later, at Multi-County Jail, Trooper Smith asked Aldridge to provide a breath sample for testing with the BAC DataMaster. (*Id.* at 85) The test disclosed that Aldridge had a concentration of alcohol content of .106. (*Id.* at 88.)

{¶5} Aldridge was charged with two counts of operation of a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a), and in violation of R.C. 4511.19(A)(1)(d). (R. at 1.) She was additionally charged with a failure to stop at a stop sign, in violation of R.C. 4511.43. (*Id.*) On March 18,

2013, Aldridge, by her attorney, entered a plea of not guilty, waived her speedy trial rights, and demanded a trial by a jury. (R. at 5.)

{¶6} After requesting discovery of numerous documents and other items from the State, Aldridge filed her "Motion to Suppress Evidence, Statements, Observations, Tests and Test Results," and requested an oral hearing on the issue. (R. at 17.) The hearing on the motion took place on August 29, 2013. On September 17, 2013, the trial court issued its ruling, denying Aldridge's motion to suppress. (R. at 49.) Subsequently, on September 18, 2013, Aldridge entered a plea of no contest to OVI in violation of R.C. 4511.19(A)(1)(a) and was found guilty of this charge only. (R. at 4.) The remaining two charges have been dismissed.

{¶7} Aldridge filed this timely appeal, in which she alleges four assignments of error.

> **ASSIGNMENT OF ERROR I** - THE TRIAL COURT'S RULING THAT THE FIELD SOBRIETY TESTS WERE CONDUCTED IN SUBSTANTIAL COMPLIANCE WITH THE STANDARDIZED TESTING PROCEDURES OF R.C. 4511.19(D)(4)(b) IS NOT SUPPORTED BY THE RECORD AND THEREFORE CONTRARY TO LAW. (TR., PASSIM)

> **ASSIGNMENT OF ERROR II** - THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO SUPPRESS THE RESULTS OF CHEMICAL TESTING THAT WAS NOT PERFORMED IN SUBSTANTIAL COMPLIANCE WITH OHIO ADMINISTRATIVE CODE SECTION 3701-53. (TR., PASSIM)

**ASSIGNMENT OF ERROR III** - THE TRIAL COURT FAILED TO APPLY THE *BURNSIDE* BURDEN-SHIFTING TEST ONCE THE DEFENDANT SHOWED WITH PARTICULARITY THROUGH A PRETRIAL MOTION TO SUPPRESS AND LIVE CROSS-EXAMINATION THAT THE DEFENDANT WAS PREJUDICED BY THE FAILURE TO SUBSTANTIALLY COMPLY WITH THE REQUIREMENTS OF O.A.C. 3701-53. (TR., TR., P. 36-43; 136-137.)

**ASSIGNMENT OF ERROR IV** - THE TRIAL COURT ERRED IN FINDING A SUFFICIENT BASIS AND PROBABLE CAUSE TO STOP, DETAIN, AND ARREST THE DEFENDANT-APPELLANT IN VIOLATION OF THE DEFENDANT-APPELLANT'S RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I SECTIONS TEN AND FOURTEEN OF THE OHIO CONSTITUTION. (TR., PASSIM)

**{¶8}** All of the assignments of error challenge the trial court's decision to deny Aldridge's motion to suppress. Therefore, before addressing the assignments of error we note the applicable standard of review. An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Norman*, 136 Ohio App.3d 46, 51, 735 N.E.2d 953 (3d Dist.). We will accept the trial court's factual findings if they are supported by competent, credible evidence because the "evaluation of evidence and the credibility of witnesses" at the suppression hearing are issues for the trier of fact. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992); *Burnside*, 2003-Ohio-5372, ¶ 8; *Norman*, 136 Ohio App.3d at 51. But we must independently determine, without deference to the trial court, whether these factual findings satisfy the legal

standard as a matter of law because "the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review." *Norman*, 136 Ohio App.3d at 52; *Burnside*, 2003-Ohio-5372, ¶ 8.

{¶9} With this standard in mind, we proceed to review the issues raised by Aldridge as they pertain to the trial court's denial of her motion to suppress. Because the questions presented by the assignments of error are interrelated, we address the issues before addressing the assignments of error, out of order.

### 1. Trooper Smith's Justification to Stop and Detain Aldridge

{¶10} Aldridge argues that Trooper Smith had no sufficient basis to stop and detain her for a suspected traffic violation. "[A] traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. Trooper Smith observed that Aldridge violated traffic laws by failing to stop at a stop sign and failing to stop before a marked stop line. Therefore, Trooper Smith's act of stopping Aldridge was justified based on personally witnessing the traffic violations. *See State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 21, quoting *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus ("Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the

Fourth Amendment to the United States Constitution."); *State v. Robinette*, 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997) (holding that stopping the defendant who was speeding was justified).

{¶11} Aldridge submits that while Trooper Smith observed the alleged traffic violations, at the time of the stop Aldridge "had already pulled into a residential parking lot and begun parking." (App't Br. at 21.) She further states that she "had no issues exiting the vehicle." (*Id.*) Aldridge argues that in view of these circumstances, Trooper Smith's ordering her to sit in the back of the patrol car and questioning her about that evening's activities "exceeded the constitutional scope of the initial stop to issue a minor traffic violation citation." *Id.*

{¶12} The Ohio Supreme Court has recognized that "the detention of a stopped driver may continue beyond the normal time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili*, 2007-Ohio-2204, at ¶ 15, quoting *State v. Howard*, 12th Dist. Preble No. CA2006-02-002, 2006-Ohio-5656, ¶ 16. Upon stopping Aldridge, Trooper Smith noticed an odor of alcoholic beverage emanating from her car and also noticed that Aldridge had bloodshot and glassy eyes. These additional facts gave rise to a reasonable, articulable suspicion of operating under the influence. Because of these additional facts that Trooper Smith learned upon stopping Aldridge, he was justified in

ordering Aldridge to step out of the car and asking her to sit in the back of the patrol car.

**{¶13}** In her brief, Aldridge cites *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984) in support of her argument that the stop exceeded the constitutionally permissible scope. In *Chatton*, a police officer stopped the defendant for a suspected failure to display license plates. *Id.* at 59. Upon approaching the vehicle, the officer noticed that a license plate was displayed. *Id.* Therefore, "the police officer no longer maintained a reasonable suspicion that appellee's vehicle was not properly licensed or registered, to further detain appellee," and further detention and search were not reasonable. *Id.* at 63. This Ohio Supreme Court case holds that where a police officer's reasonable suspicion is dissipated upon an initial stop of a suspect, the officer has no justification to proceed further with detaining and questioning the suspect.

**{¶14}** Aldridge seems to imply that her act of proper parking and failure to display any "issues" exiting the vehicle should have caused Trooper Smith to have no contact with her. Aldridge's situation does not mandate a *Chatton* analysis. She was being pulled over for traffic violations, which had in fact occurred. The facts that she "had already pulled into a residential parking lot and begun parking," and exited the vehicle without "issues," do not affect the officer's justification to stop her for her traffic violations. Unlike in *Chatton*, upon approaching her car,

Trooper Smith did not discover that his suspicions of traffic violations were not justified.

**{¶15}** Therefore, Trooper Smith's actions of stopping and detaining Aldridge were justified and did not exceed the constitutional scope of a traffic stop.

### 2. *State's Failure to Provide the NHTSA Standards for Field Sobriety Tests*

**{¶16}** This assignment of error challenges the trial court's refusal to suppress the results of the three field sobriety tests that Trooper Smith conducted upon Aldridge. In order for the testimony and evidence of the field sobriety tests results to be admissible in an OVI prosecution, the tests must be administered "in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration." R.C. 4511.19(D)(4)(b); *see also State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 28. "[T]he results of the field sobriety tests are not admissible at trial unless the state shows by clear and convincing evidence that the officer administered the test in substantial compliance with NHTSA guidelines." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 11.

**{¶17}** Aldridge asserts that the State did not satisfy its burden of proving by clear and convincing evidence that Trooper Smith substantially complied with the NHTSA standards for performing field sobriety tests because the State never explained or provided evidence as to what the NHTSA standards were. Aldridge alleges that since no NHTSA standards were provided, the trial court could not have found that the field sobriety tests were conducted in substantial compliance with those standards and its ruling is therefore, unsupported by the record.

**{¶18}** We have previously noted that "if no evidence of a reliable field sobriety testing standard is introduced by the state at the suppression hearing, either via testimony or through the introduction of the applicable manual, the state has failed to meet its burden of demonstrating compliance." *State v. Kitzler*, 3d Dist. Wyandot No. 16-11-03, 2011-Ohio-5444, ¶ 13.

> It is only logical that in order to prove substantial compliance with a given standard, there must be at minimum some evidence of the applicable standard for comparative purposes. Accordingly, where the suppression motion raises specific challenges to the field sobriety tests, the state must produce some evidence of the testing standards, be it through testimony or via introduction of the NHTSA or other similar manual or both.

*Id.*, quoting *State v. Bish*, 191 Ohio App.3d 661, 2010-Ohio-6604, 947 N.E.2d 257, ¶ 27 (7th Dist.). "Testimony about *how* the trooper performed the field sobriety tests presents only half the picture." *Id.*, quoting *Bish,* 2010-Ohio-6604,

at ¶ 28. Without any standards to which to compare the trooper's procedure, it is impossible to determine whether those tests are admissible. *Id.*

**{¶19}** In the instant case, Trooper Smith testified in detail as to the procedure that he followed in conducting the field sobriety tests upon Aldridge. (Tr. at 64-94.) This testimony presented half of the picture necessary for a finding of "substantial compliance with the testing standards * * *." R.C. 4511.19(D)(4)(b). The second half of the picture required evidence of the testing standards. *Kitzler*, 2011-Ohio-5444, at ¶ 13.

**{¶20}** The State did not offer the NHTSA manual into evidence. Although "the introduction of the NHTSA manual is [not] a necessary predicate to this issue," in order to satisfy the state's burden, there must be "some evidence of the testing standards" for comparative purposes. *See State v. Ryan*, 5th Dist. Licking No. 02-CA-00095, 2003-Ohio-2803, ¶ 18; *Kitzler*, 2011-Ohio-5444, at ¶ 13, quoting *Bish,* 2010-Ohio-6604, at ¶ 27. Here, Trooper Smith testified about some of the standards for field sobriety tests, but not about all of them. (*See, e.g.*, Tr. at 73; 75-76.) We note that during his testimony, Trooper Smith admitted that he was "trained in the administration of the field sobriety tests as set forth in the manual that is published by The National Highway Transportation Safety Administration." (*Id.* at 62.) He testified that he was familiar with all the requirements of the NHTSA manual and that he complied with the requirements in

the manual "in every case." (*Id.* at 63.) Toward the conclusion of his testimony on direct examination, Trooper Smith was asked: "Have you been instructed to perform these field—standardized field sobriety tests?" He answered "Yes." Trooper Smith was then asked "Did you do that this evening, that morning in the stop?" He again answered "Yes." (*Id.* 83-84.)

**{¶21}** We need not determine whether Trooper Smith's testimony established by clear and convincing evidence that the field sobriety testing substantially complied with accepted testing standards because, irrespective of whether the field sobriety test *results* were properly admitted in this case, "ample evidence exists" to otherwise support Aldridge's arrest and conviction, as further discussed below. *See Kitzler*, 2011-Ohio-5444, at ¶ 15, quoting *State v. Matus,* 6th Dist. Wood No. WD-06-072, 2008-Ohio-377, ¶ 27 (holding that even "[w]hen a trial court erroneously fails to suppress the results of field sobriety tests, if ample evidence exists to support the arrest and conviction, this error is harmless"). Therefore, any error allegedly committed by the trial court by failing to suppress the *results* of field sobriety tests would be harmless.

### 3. Probable Cause for Arrest

**{¶22}** Aldridge alleges that her arrest was unconstitutional. If Aldridge's arrest was in fact unconstitutional, all evidence derived from the arrest must be suppressed as illegally obtained. *See State v. Flanagan*, 4th Dist. Lawrence No.

03CA11, 2003-Ohio-6512, ¶ 7, citing *State v. Daily*, 4th Dist. Athens No. 97CA25, 1998 WL 18139, *2 (Jan. 15, 1998), and *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**{¶23}** We begin by recognizing that the arrest at issue was conducted without a warrant and as such, it required Trooper Smith to have probable cause to believe that a criminal offense had been committed or was being committed by Aldridge. *See State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66, citing *Gerstein v. Pugh*, 420 U.S. 103, 111-112, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). "In determining whether the police had probable cause to arrest an individual for [OVI], we must consider whether, at the moment of arrest, the police had information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Dillehay*, 3d Dist. Shelby No. 17-12-07, 2013-Ohio-327, ¶ 19, quoting *State v. Thompson,* 3d Dist. Union No. 14-04-34, 2005-Ohio-2053, ¶ 18; *State v. Homan,* 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statute on other grounds as stated in State v. Boczar,* 113 Ohio St.3d 148, 863 N.E.2d 155, 2007-Ohio-1251, ¶ 10. We will evaluate the existence of probable cause in this case under the totality of the circumstances approach. *Id.*, citing *State v. Cromes*, 3d Dist. Shelby No. 17-06-07, 2006-Ohio-6924, ¶ 38. Under this approach, an arresting officer may "draw on their own

experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *Cromes*, 2006-Ohio-6924, at ¶ 38, quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), *and United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

**{¶24}** Aldridge argues that Trooper Smith lacked probable cause to arrest her because, due to the unreliability of the field sobriety tests, there was no sufficient basis for her arrest. We have previously held that factors that may be taken into account in probable cause determination are not limited to the field sobriety tests:

> While field sobriety tests must be administered in [substantial[1]] compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded for lack of strict compliance.

*State v. Ferguson*, 3d Dist. Defiance No. 4-01-34, 2002 WL 596115, *3, citing *Homan,* 89 Ohio St.3d at 427. Furthermore, even when the test *results* are excluded, the testimony about the defendant's performance during the

---

[1] Although the above quote uses "strict compliance," later cases clarified that strict compliance is no longer required and substantial compliance with the testing procedures is sufficient. *See State v. Plummer*, 22 Ohio St.3d 292, 490 N.E.2d 902 (1986), syllabus.

administration of the excluded tests is admissible for the purpose of determining probable cause under the totality of the circumstances approach:

> We see no reason to treat an officer's testimony regarding the defendant's performance on a nonscientific field sobriety test any differently from his testimony addressing other indicia of intoxication, such as slurred speech, bloodshot eyes, and odor of alcohol. In all of these cases, the officer is testifying about his perceptions of the witness, and such testimony helps resolve the issue of whether the defendant was driving while intoxicated.
>
> Unlike the actual test results, which may be tainted, the officer's testimony is based upon his or her firsthand observation of the defendant's conduct and appearance.

*State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶¶ 14-15; *State v. Griffin*, 12th Dist. Butler No. CA2005-05-118, 2006-Ohio-2399, ¶ 11 ("Regardless of a challenge to field sobriety tests, a police officer may testify regarding his observations made during administration of the tests."). Therefore, Trooper Smith's observations about Aldridge's behavior during administering field sobriety tests are admissible for the purpose of determining whether the trial court erred when it found that there was probable cause to arrest Aldridge, even if the test *results* should have been excluded.

{¶25} Under the totality of the circumstances we cannot conclude that the trial court erred in its finding that it was reasonable for Trooper Smith to believe that Aldridge was under the influence of alcohol, based on his experience and specialized training. At the moment of the arrest, Trooper Smith had reasonably

trustworthy information indicating that Aldridge had consumed "two Bud Lights" prior to driving. He noticed Aldridge's bloodshot and glassy eyes, as well as an odor of alcoholic beverage coming from her breath. Trooper Smith testified that, during the instruction phase of the walk and turn test, Aldridge could not maintain balance with her feet, and that she failed to touch heel to toe on some of the steps, raised arms to balance herself, and did an incorrect turn when performing the test. (Tr. at 77.) Trooper Smith further observed that, at one leg stand test, Aldridge "swayed during the test while balancing, raised her arms more than 6 inches and put her foot down three times." (*Id.* at 82.) Additionally, Aldridge failed to follow Trooper Smith's instructions as to the manner of counting when performing the test. (*Id.* 82.)

{¶26} All these observations could sufficiently cause a prudent person to believe that Aldridge was operating a vehicle under the influence. Therefore, the finding of probable cause was correct and Aldridge's arrest was not unconstitutional.

### 4. Compliance with Breath Testing Procedures

{¶27} Aldridge alleges that the breath test results should have been suppressed due to noncompliance with Ohio Adm.Code Chapter 3701.53. We have previously set forth the standard for reviewing a challenge to the breath test analysis in *State v. Blair*, 3d Dist. Marion No. 9-12-14, 2013-Ohio-646.

> In seeking to suppress the results of a breath analysis test, the defendant must set forth an adequate basis for the motion. *State v. Shindler,* 70 Ohio St.3d 54, 58, [636 N.E.2d 319 (1994)]. The motion must state the " * * * legal and factual bases with sufficient particularity to place the prosecutor and court on notice as to the issues contested." *Id.*; Crim.R. 47. Once an adequate basis for the motion has been established, the prosecution then bears the burden of proof to demonstrate substantial compliance with the Ohio Department of Health regulations. *Xenia v. Wallace,* 37 Ohio St.3d 216, 220, [524 N.E.2d 889] (1988). If the prosecution demonstrates substantial compliance, the burden of proof then shifts to the defendant to overcome the presumption of admissibility and demonstrate that he or she was prejudiced by anything less than strict compliance. *State v. Burnside,* 100 Ohio St.3d 152, [2003-Ohio-5372, 797 N.E.2d 71, ¶ 24].
>
> The extent of the prosecution's burden to show substantial compliance varies with the degree of specificity of the violation alleged by the defendant. "When a defendant's motion to suppress raises only general claims, along with the Ohio Administrative Code sections, the burden imposed on the state is fairly slight." *State v. Johnson,* 137 Ohio App.3d 847, 851, [739 N.E.2d 1249, 1252 (12th Dist.2000)]. Specifically, when a motion fails to allege a fact-specific way in which a violation has occurred, the state need only offer basic testimony evidencing compliance with the code section. *State v. Bissaillon,* 2d Dist. No. 06–CA–130, 2007–Ohio–2349, ¶ 15.

*Id.* at ¶¶ 35-36.

{¶28} In the instant case, Aldridge's motion to suppress listed eight reasons for why the breath analysis test should have been suppressed, including failure to properly test and calibrate the BAC DataMaster, which was used for Aldridge's breath test. (R. at 17 at 2.) During the hearing on the motion to suppress, the State offered testimony of several officers, who testified that the BAC DataMaster was operating correctly on the day of Aldridge's test. (*See. E.g.*, Tr. at 85-86, 126-

127.) There was testimony that, in accordance with the regulations, proper instrument checks of the BAC DataMaster were performed on March 10, 2013, and March 17, 2013, to calibrate the effectiveness of the machine. (*Id.* at 126-127, 130-131.) The instrument checks disclosed satisfactory target value for the instrument tests. (*Id.* at 130-131.) This testimony was sufficient to satisfy the State's burden of proving substantial compliance. (*See* R. at 49 at 2.)

{¶29} To overcome the presumption of admissibility, Aldridge offered photographs of, what she claimed to be, the simulator used at Multi-County Correction Center, which depicted water condensation on the simulator jar. (Tr. at 20, 132.) Aldridge argued that the condensation proves noncompliance with the regulations of the Ohio Administrative Code. The photographs submitted into evidence were not dated and no evidence was provided to conclude that the water condensation was present on the simulator jar on the day or days in question. (*Id.* at 26-27.) Aldridge offered no testimony or evidence that the condensation would affect the tests, while Trooper Benjamin Addy ("Trooper Addy") testified "it still gonna have the same amount of alcohol and everything in it." (*Id.* at 28, 31-32.) Trooper Marty Ferguson ("Trooper Ferguson") testified that the amount of moisture from the condensation would be "minute in nature" and it would not throw the test out of balance. (*Id.* at 135-136.) Without any evidence that there

was water condensation on the simulator jar, which was used in relation to Aldridge's breath test, we cannot hold that Aldridge was prejudiced.

{¶30} Aldridge claims prejudice from the fact that Trooper Addy, who performed the instruments check on the BAC Data Master at issue on March 10, 2013, failed to check the machine's seals prior to beginning the instruments check, "even though the operator's manual requires it." (*Id.* at 16.) We have previously addressed a similar argument and held that

> adherence to [breath machine's operator guide] is not a requirement for admissibility of the breath test, as the ODH has neither adopted the operator guide as part of its regulations, nor has it issued a directive [that follows the manual]. Merely requiring that the operational manual be kept at the site where breath tests are being performed does not give rise to an implicit requirement that the operator must substantially comply with every provision in the manual.

*State v. Isbell*, 3d Dist. Shelby No. 17-08-08, 2008-Ohio-6753, ¶ 22; *see also State v. Browning*, 12th Dist. Warren No. CA2007-10-118, 2008-Ohio-2905, ¶ 9 ("The plain language of the ODH regulations does not require strict compliance with the operator's manual."); *State v. Stout*, 5th Dist. Licking No. 07-CA-51, 2008-Ohio-2397, ¶ 120 ("We find any other ancillary manuals, including the manufacturer's manual, are advisory only and not required unless and until adopted by the Ohio Department of Health."). Aldridge does not assert that Ohio Administrative Code requires compliance with the operator's manual. Therefore, the State was not

required to prove that Trooper Addy checked the machine's seals in order to satisfy its burden of proving substantial compliance.

**{¶31}** Aldridge next alleges that Trooper Smith failed to continuously observe her for twenty minutes prior to administering the test. (*Id.*) This challenge is based on the regulation that breath samples "shall be analyzed according to the operational checklist for the instrument being used." Ohio Adm.Code 3701-53-02(D); R.C. 4511.19(D)(1). It has been recognized that one of the elements on the checklist is "that the person being tested be observed for twenty minutes before the test to prevent the oral intake of any material." *State v. Siegel*, 138 Ohio App.3d 562, 566-567, 741 N.E.2d 938 (3d Dist. 2000). This requirement operates "to eliminate the possibility that the test result is a product of anything other than the subject's deep lung breath." *State v. McAuley*, 8th Dist. Cuyahoga No. 76720, 2000 WL 1038186, *4 (July 27, 2000); *accord State v. Steele*, 52 Ohio St.2d 187, 191, 370 N.E.2d 740 (1977); *State v. Camden*, 7th Dist. Monroe No. 04 MO 12, 2005-Ohio-2718, ¶ 13, quoting *Bolivar v. Dick,* 76 Ohio St.3d 216, 218, 667 N.E.2d 18 (1996).

**{¶32}** Strict compliance with the twenty-minute observation period is not required, however, as the courts require substantial compliance. *See Bolivar*, 76 Ohio St.3d at 218; *Camden*, 2005-Ohio-2718, at ¶ 14; *McAuley*, 2000 WL

1038186, at *4; *State v. Holly*, 135 Ohio App.3d 512, 515, 734 N.E.2d 869 (12th Dist.1999). Therefore, the State need not demonstrate that

> the subject was constantly within [the witnessing officer's] gaze, but only that during the relevant period the subject was kept in such a location or condition or under such circumstances that one may reasonably infer that his ingestion of any material without the knowledge of the witness is unlikely or improbable. *To overcome that inference, the accused must show that he or she did, in fact, ingest some material during the twenty-minute period. The 'mere assertion that ingestion was hypothetically possible ought not to vitiate the observation period foundational fact so as to render the breathalyzer test results inadmissible.*

(Emphasis sic.) *Siegel*, 138 Ohio App.3d at 569, 741 N.E.2d 938, quoting *State v. Adams*, 73 Ohio App.3d 735, 740, 598 N.E.2d 176 (2d Dist.1992), *and Steele*, 52 Ohio St.2d at 192; *see also Isbell*, 3d Dist. No. 17-08-08, 2008-Ohio-6753, at ¶ 34.

**{¶33}** Trooper Smith testified that Aldridge did not ingest anything during the twenty-minute observation period prior to the breath test. (Tr. at 124.) The trial court acknowledged Trooper Smith's testimony admitting that part of the twenty-minute observation period was when Aldridge was seated behind Trooper Smith as he drove the car. (R. at 49 at 3.) The trial court further acknowledged that Trooper Smith did not directly stare at Aldridge when he was filling out paperwork. (*Id.*) The trial court viewed the videotape of the booking area, to which the parties stipulated, and found that "[n]othing on the videotape shows Defendant place anything in her mouth." (*Id.*)

{¶34} Aldridge did not offer any evidence that she had placed anything in her mouth, as to overcome the inference that "her ingestion of any material without the knowledge of the witness is unlikely or improbable." *See Siegel*, 138 Ohio App.3d at 569. Although Aldridge attempted to argue that she might have burped or regurgitated during the twenty-minute observation period, she provided no evidence that actual burp or regurgitation had occurred. Accordingly, her unsupported allegations are insufficient to invalidate the test result that was performed in substantial compliance with the Ohio Administrative Code regulations. *See Isbell*, 2008-Ohio-6753, at ¶ 36; *State v. Booth*, 1st Dist. Hamilton No. C-070184, 2008-Ohio-1274, ¶¶ 14-15.

{¶35} Aldridge's final argument concerns the trial court's statement that the testimony at the suppression hearing should be limited "to issues of admissibility." (Tr. at 41.) She argues that following this statement she was denied "the opportunity to expose the prejudicial effect" of the State's failure to strictly comply with requirements of the Ohio Administrative Code. (App't Br. at 19.) She particularly alleges that she was unable to cross examine and impeach the testimony of Trooper Addy and Trooper Ferguson regarding the effects that water condensation had on her breath test analysis. (App't Br. at 19-20.)

{¶36} Contrary to Aldridge's assertions in her brief, the trial court did not find that her questions regarding calibration and instrument checks on pages 38-39

of the transcript "went to 'weight rather than admissibility.' " (*See* App't Br. at 19-20.) The trial court merely noted, "some of the things that you are now getting into go more to—to weight rather than admissibility. So we're gonna limit the testimony to issues of admissibility." (Tr. at 41.) We note that the trial court gave Aldridge a lot of "leeway," overruling multiple objections by the State to her questioning. (*See, e.g.*, Tr. at 27, 31, 33, 36.) In spite of multiple objections by the State, Aldridge was not denied the opportunity to question the witnesses on the challenged issues.

{¶37} Furthermore, as we already held above, there was no evidence that the condensation was present on the machine's simulator jar on the days in question or that it was present when Aldridge's breath test was conducted. Therefore, the trial court's limiting of Aldridge's questioning on the effect of water condensation on her breath test is immaterial.

### *Conclusion*

{¶38} Accordingly, based on our discussion in parts 1-3 of this opinion, the first and fourth assignments of error are overruled. Furthermore, based on our discussion in part 4 of this opinion, the second and third assignments of error are overruled.

{¶39} Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and

argued. The judgment of the Municipal Court in Marion County, Ohio, is therefore affirmed.

*Judgment Affirmed*

**SHAW, J., concurs.**

**PRESTON, J., concurs in Judgment Only.**

**/jlr**