[Cite as *State v. Rapp*, 2013-Ohio-4408.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

JAMES RAPP

    Appellant

C.A. No.    12CA0062

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE Nos.    CRB 12-08-01151
              TRD 12-08-07789

DECISION AND JOURNAL ENTRY

Dated: October 7, 2013

BELFANCE, Presiding Judge.

{¶1} Defendant-Appellant James Rapp appeals from rulings of the Wayne County Municipal Court. For the reasons set forth below, we affirm.

I.

{¶2} On August 4, 2012, the Ohio State Highway Patrol Wooster Dispatch Center received a call from an identified citizen that the driver of a green truck was unable to drive within its lane on I-71. The caller provided the license plate number of the vehicle and described the plate as being yellow with red numbers. The caller continued to follow the vehicle and observed it exit the interstate at mile post 196. Based upon the call, Trooper Daniel Morrison of the Ohio State Highway Patrol was dispatched to respond and, ultimately, initiated a traffic stop of a vehicle matching the description provided by the caller. Based upon the stop, two complaints were filed against Mr. Rapp: one complaint alleged that Mr. Rapp violated R.C. 4510.14 by driving while under an OVI suspension (TRD-12-08-07789) and one complaint

alleged that Mr. Rapp violated R.C. 2925.14(C)(1) by possessing drug paraphernalia and R.C. 2925.11 by possessing marijuana (CRB-12-08-01151).

{¶3} Mr. Rapp filed a motion to suppress asserting that the trooper lacked reasonable suspicion to stop him. A hearing was held on the motion and the trooper, the citizen informant, and Mr. Rapp testified at the hearing. The trial court denied Mr. Rapp's motion concluding that the trooper possessed reasonable suspicion justifying the initial stop of the vehicle. The next day, Mr. Rapp filed a combined motion, which (1) notified the court of the withdrawal of a jury demand; (2) sought leave to file an additional motion to suppress instanter; (3) set forth the motion to suppress; (4) sought leave to supplement the motion to suppress; and (5) sought a continuance of the trial. Mr. Rapp asserted that, at the suppression hearing, he had just discovered that the trooper's suspicions that Mr. Rapp was driving under the influence were nearly immediately found to be unwarranted. Thus, Mr. Rapp sought to challenge whether Mr. Rapp's continued detention was justified. The State opposed Mr. Rapp's motion to file an additional motion to suppress asserting that his motion was untimely and that his new motion was not based on newly discovered evidence. The trial court concluded that, Mr. Rapp could have raised the issue in his original motion and found that because his argument was not raised in a timely manner, it was waived.

{¶4} Mr. Rapp pleaded no contest to violating R.C. 4510.14 and R.C. 2925.11, and the State dismissed the charge involving R.C. 2925.14(C)(1). The trial court stayed execution of Mr. Rapp's sentence pending appeal. Mr. Rapp has appealed, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S FIRST MOTION TO SUPPRESS BECAUSE UNDER THE TOTALITY OF THE CIRCUMSTANCES, THE CITIZEN REPORT AND THE OFFICER'S OBSERVATIONS DID NOT CREATE A REASONABLE SUSPICION TO STOP THE VEHICLE.

{¶5} Mr. Rapp asserts in his first assignment of error that the trial court erred in denying his motion to suppress because the trooper lacked reasonable suspicion to initiate a traffic stop. We do not agree.

{¶6} The Supreme Court of Ohio has held that

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. A traffic stop is constitutionally valid if probable cause exists. *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), syllabus. In addition, traffic stops can be constitutionally valid if "an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008–Ohio–4539, ¶ 7. Whether reasonable, articulable suspicion exists is determined by the totality of the circumstances. *Id.*

{¶7} During the hearing, the parties agreed that the only issue being addressed was the legality of the initial traffic stop. In its entry ruling on Mr. Rapp's motion, the trial court stated that "the question was whether[,] given the totality of the circumstances[,] the informant's report afforded reasonable suspicion justifying an investigatory stop of [Mr. Rapp]."

{¶8}    The testimony presented at the hearing revealed that on August 4, 2012, Gail Montani was driving on I-71, returning from the Columbus airport after dropping off a foreign exchange student, when she noticed a green truck that was driving at an inconsistent speed and also was not staying in its lane.  At one point she thought the truck was going to veer into her car.  Ms. Montani was concerned that the driver was experiencing a medical emergency or was intoxicated.  Ms. Montani witnessed the erratic driving for approximately ten minutes total.  At some point during that period she called 911.  She told the operator the direction she was traveling, the highway, the mile marker, and that the driver of the green truck was having trouble staying in its lane and was not maintaining a consistent speed.  Ms. Montani gave the operator her name and phone number as well.  She continued talking to the operator while she was driving.  At one point she saw the driver of the green truck hunch down and cover his face, behavior which she thought was suspicious.  Mr. Rapp testified that the behavior that Ms. Montani observed and found suspicious was the act of him reaching down to pick up the top of the breathalyzer that had fallen to the floor and then breathing into it.  Mr. Rapp explained that he had to breathe into it to start the car and had to do it again on regular intervals while driving.  Ms. Montani continued to drive alongside the green truck and observe its erratic movement until the green truck exited the highway.  Ms. Montani reported where the truck exited to the police, and her contact with the operator ended.

{¶9}    Trooper Morrison was patrolling I-71 on August 4, 2012, finishing up a traffic stop when he received the dispatch that there was a vehicle around mile post 190 that "was all over the roadway."  Trooper Morrison was told that the vehicle was a green truck and that it had a yellow license plate with red numbers.  Trooper Morrison was additionally supplied with the license plate number.  Dispatch informed Trooper Morrison that Ms. Montani was still with the

vehicle up until it exited at exit 196. At that point, Trooper Morrison was "at approximately at the 195 so [he] continued on and exited at 196." He proceeded northbound on route 301 and finally spotted two green trucks near the intersection of routes 301 and 42. One of the vehicles was stopped at the light, but that vehicle did not match the description. Trooper Morrison noticed the other truck off to the left and sped up to catch up to it. The other truck matched the license plate description given by Ms. Montani. As Trooper Morrison approached the vehicle, "the driver had his right turn signal on to go into a liquor store and [Trooper Morrison] activated [his] overhead lights as [Mr. Rapp] was turning into the liquor store." Mr. Rapp testified that he thought Trooper Morrison was trying to pull someone else over and that is why he proceeded into the parking lot. Mr. Rapp testified that he was not under the influence of any substance. Trooper Morrison only had an opportunity to view Mr. Rapp's driving for approximately 25 yards. During that time, Trooper Morrison did not observe any driving infractions. When Trooper Morrison approached Mr. Rapp's vehicle he noticed Mr. Rapp's breathalyzer machine and did not smell any alcohol. Thus, at that point, Trooper Morrison did not harbor any suspicion that Mr. Rapp was under the influence.

{¶10} Because Trooper Morrison did not witness any erratic driving or driving infractions, the only possible basis for the stop would be the information provided by Ms. Montani. The Supreme Court of Ohio has held that "[a] telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability." *Maumee v. Weisner,* 87 Ohio St.3d 295 (1999), paragraph two of the syllabus. "Where * * * the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." *Id.* at 299. "The appropriate analysis, then, is whether

the tip itself has sufficient indicia of reliability to justify the investigative stop. Factors considered highly relevant in determining the value of [the informant's] report are the informant's veracity, reliability, and basis of knowledge." (Internal quotations and citations omitted.) *Id.*

> To assess the existence of these factors, it is useful to categorize informants based upon their typical characteristics. Although the distinctions between these categories are somewhat blurred, courts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant. While the United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's reliability. The court has observed, for example, that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration. The court has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: [I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary.

(Internal citations and quotations omitted.) *Id.* at 300.

{¶11} In the instant matter, it is clear that Ms. Montani was an identified citizen informant, thus providing a greater degree of reliability to the information she provided as compared to information provided by persons in other categories of informants. *Id.* However, "categorization of the informant as an identified citizen informant does not itself determine the outcome of this case. Instead it is one element of our totality of the circumstances review of this informant's tip, weighing in favor of the informant's reliability and veracity." *Id.* at 302. Additionally, we conclude that "the informant's basis of knowledge also furthers h[er] credibility[,] * * * [because] the citizen's tip constituted an eyewitness account of the crime." *Id.* ("Typically, a personal observation by an informant is due greater reliability than a secondhand description."). Like the informant in *Weisner*, Ms. Montani was relaying

information to dispatchers as she witnessed the events, including the precise location of where the vehicle exited I-71. "This immediacy lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory." *Id.* Also, Ms. Montani's motivation for reporting the events supports the reliability of her tip. *See id.* Based on what Ms. Montani reported to the operator, i.e. that she was driving on the highway with a truck that was having difficulty staying in its lane, it can be reasonably inferred that Ms. Montani's motivation was based on her concern for her safety, the safety of other motorists on the road, and possibly the wellbeing of the driver of the vehicle. *See id.* This factual situation is very similar to the situation in *Weisner* in which the Supreme Court of Ohio ultimately concluded that the informant's tip had enough indicia of reliability to justify the stop. *See id.* at 302-303. "Taken together, these factors persuade us that the informant's tip [wa]s trustworthy and due significant weight." *Id.* at 302. Accordingly, the fact that Trooper Morrison did not witness any traffic violations in the short time he followed Mr. Rapp's vehicle before initiating the traffic stop does not lead us to conclude that the Trooper Morrison lacked reasonable suspicion to conduct an investigatory stop. *See State v. Catanzarite,* 9th Dist. Summit No. 22212, 2005-Ohio-260, ¶ 15, quoting *State v. Roberts,* 9th Dist. Summit No. 20355, 2001 WL 490014, *3 (May 9, 2001) ("'[E]ven if the officer does not observe the behavior reported by the informant, that does not necessarily undermine the existing reasonable suspicion.'"). Thus, we overrule Mr. Rapp's first assignment of error.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S SECOND MOTION TO SUPPRESS BECAUSE ONCE THE OFFICER DETERMINED THAT DEFENDANT WAS NOT DRIVING UNDER THE INFLUENCE, THE SUSPICION THAT LED TO THE STOP HAD BEEN RESOLVED, THUS ENDING ANY FURTHER LEGAL JUSTIFICATION FOR THE CONTINUED DETENTION THAT OCCURRED.

{¶12} Mr. Rapp asserts in his second assignment of error that the trial court erred in denying his second motion to suppress because the trooper lacked continuing reasonable suspicion to prolong the stop. We do not agree in light of the argument raised.

{¶13} In his appellate brief, Mr. Rapp argues the merits of his contention that the trooper impermissibly prolonged the traffic stop. The problem with Mr. Rapp's argument is that the trial court never considered whether Trooper Morrison impermissibly prolonged the stop without justification to do so. Mr. Rapp filed the motion at issue the day after the ruling on his first motion to suppress was issued. Mr. Rapp filed a combined motion, which (1) notified the court of the withdrawal of a jury demand; (2) sought leave to file an additional motion to suppress instanter, allegedly due to newly discovered evidence at the suppression hearing; (3) set forth the motion to suppress; (4) sought leave to supplement the motion to suppress; and (5) sought a continuance of the trial. The State asserted in response that Mr. Rapp's argument was not based on newly discovered evidence. The State pointed out that Mr. Rapp had received discovery in the case. Attached to its response, the State submitted two items: (1) a copy of the traffic citation indicating that Mr. Rapp failed to provide proof of insurance at the time of the stop; and (2) a copy of an entry from the Wadsworth Municipal Court indicating that one of the conditions of Mr. Rapp's driving privileges was that he must carry proof of insurance. The trial court concluded that Mr. Rapp could have raised the issue in his original motion and found that, because his argument was not raised in a timely manner, it was waived. Mr. Rapp has not challenged this conclusion on appeal, and we are not inclined to develop an argument for him. *See* App.R. 16(A)(7); *Cardone v. Cardone,* 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Instead, Mr. Rapp attempts to argue the merits of an argument that was never addressed by the trial court. Mr. Rapp's second motion to suppress was not denied on the basis

he now challenges, and, thus, his argument is without merit. Mr. Rapp's second assignment of error is overruled.

## III.

**{¶14}** In light of the foregoing, we overrule Mr. Rapp's assignments of error and affirm the judgments of the Wayne County Municipal Court.

Judgments affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

JOSEPH J. JACOBS, JR., Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.