[Cite as *State v. Heimberger*, 2018-Ohio-3001.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

       PLAINTIFF-APPELLEE,                    CASE NO.  9-17-45

       v.

DEBRA A. HEIMBERGER,                O P I N I O N

       DEFENDANT-APPELLANT.

Appeal from Marion County Municipal Court
Trial Court No. TRC 1703179

**Judgment Affirmed**

**Date of Decision:   July 30, 2018**

APPEARANCES:

    *Nathan Witkin* for Appellant

    *Stephen E. Chaffin* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Debra Heimberger ("Heimberger"), appeals the October 17, 2017 judgment of the Marion County Municipal Court of her conviction of OVI, in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree.

*Facts and Procedural History*

{¶2} This appeal stems from the events that occurred on the morning of April 14, 2017, when Heimberger was cited for operating a vehicle while under the influence, or drug of abuse, in violation of R.C. 4511.19(A)(1)(a), and for failure to drive in marked lanes, in violation of R.C. 4511.33. Heimberger entered pleas of not guilty to both charges and the matter was set for trial.

{¶3} Prior to trial, Heimberger filed a motion to suppress the evidence obtained as a result of the traffic stop. In her motion, Heimberger argued: that there was no lawful cause for the stop; that the field sobriety tests were not administered in substantial compliance with the standards of the National Highway Traffic Safety Administration; and that her statements were obtained in violation of her Fifth Amendment rights. Following an evidentiary hearing on the motion, the trial court denied the request concluding: that Trooper Overly "had probable cause to stop the Defendant; that the Walk and Turn Standardized Field Sobriety Test was administered in substantial compliance with the NHTSA standards; that the

Defendant was not in custody pertaining to arrest but rather for safety purposes and as part of the investigation; and that there was probable cause to arrest the Defendant considering the totality of the circumstances". (Doc. 34).

{¶4} The case proceeded to a jury trial in the trial court on October 11, 2017, whereupon a jury convicted Heimberger of operating a vehicle while under the influence of a drug of abuse. Contemporaneously, the trial court dismissed Heimberger's marked lanes violation charge.

{¶5} On October 17, 2017, the trial court sentenced Heimberger to 30 days in jail, suspending 27 days. It is from this entry that Heimberger appeals, presenting the following assignments of error for our review.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT IMPROPERLY EXCLUDED EXPERT TESTIMONY FROM DEFENDANT'S COUNSELOR.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT IMPROPERLY EXCLUDED LAY WITNESS TESTIMONY FROM DEFENDANT'S COUNSELOR.**

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED IN FINDING REASONABLE SUSPICION AT THE TIME THAT IS [SIC] THE TROOPER INITIATED THE TRAFFIC STOP.**

**ASSIGNMENT OF ERROR NO. IV**

**THE DEFENDANT-APPELLANT'S STATEMENTS REGARDING HER USE OF MEDICATIONS SHOULD HAVE BEEN SUPPRESSED AS HAVING BEEN GATHERED IN VIOLATION OF HER FIFTH AMENDMENT RIGHTS.**

**ASSIGNMENT OF ERROR NO. V**

**THE FINDING OF THE JURY THAT DEFENDANT-APPELLANT VIOLATED R.C. 4511.19 BEYOND A REASONABLE DOUBT WAS BEYOND THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶6} Due to the nature of Heimberger's assignments of error, we elect to address them out of order.

*Assignment of Error No. III*

{¶7} In her third assignment of error, Heimberger contends that the trial court erred in finding that Trooper Overly had a reasonable suspicion to initiate a traffic stop. We disagree.

*Standard of Review*

{¶8} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).

Therefore, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion to the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706.

*Analysis*

{¶9} The investigatory stop of an automobile is a seizure for purposes of the Fourth amendment and, consequently, must be based on a law enforcement officer's reasonable suspicion "that a motorist has committed, is committing, or is about to commit a crime". *State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, citing *State v. Dillehay*, 3d Dist. Shelby No. 17-12-07, 2013-Ohio-327, ¶13, citing *State v. Johnson*, 3d Dist. Hancock No. 5-07-43, 2008-Ohio-1147, ¶16*; State v. Aldridge*, 3d Dist. Marion No. 9-13-54, 2014-Ohio-4537, ¶10, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶7. In justifying the stop, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion". *Terry v. Ohio*, 392 U.S. 1, 21; *State v. Bobo*, 37 Ohio St.3d 177, 178. The reasonableness of the officer's actions is evaluated in light of the totality of the circumstances

surrounding the stop. *State v. Freeman*, 64 Ohio St.2d 291, paragraph one of the syllabus.

{¶10} Whether a police officer had "an objective and particularized suspicion that criminal activity was afoot must be based on the entire picture – a totality of the surrounding circumstances". *State v. Andrews*, 57 Ohio St.3d 86, 87, citing *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690. "[The] circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Id.* at 87-88. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *Id*, at 88.

{¶11} Further, when a radio dispatch to law enforcement is based on information provided by an informant's tip, "the determination of reasonable suspicion will be limited to an examination of the weight of reliability due that tip. The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justifying the investigative stop." *Maumee v. Weisner*, 87 Ohio St.3d 295. Relevant factors in this determination include "the informant's veracity, reliability, and basis of knowledge". *Id.* In making this determination, courts consider whether the informant can be classified as an anonymous tipster, a known

confidential informant, or an identified citizen informant. *Id*. at 300. As a general rule, "an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary * * *". *Id*. However, in the case *sub judice*, because Trooper Overly also observed Heimberger's driving, this Court does not need to consider whether the *tip alone* was sufficient to provide him with reasonable suspicion to justify stopping Heimberger's vehicle.

{¶12} Here, Trooper Overly initiated a traffic stop of Heimberger based upon information relayed to him via a radio dispatch *and* upon his actual observation of the manner in which Heimberger operated her vehicle. The record reveals that on the date in question, Holly Schauber ("Schauber"), the citizen informant, called 911 and informed the dispatcher that a vehicle was being operated "very erratically and swerving all over the road", "was going to kill someone", "had forced at least two semi-trucks off the road", and "had been in the grassy median, almost hitting oncoming traffic, and swerved back into her lane of travel". Schauber identified the vehicle to be a U-Haul van ("van"). Thereafter, after coming into contact with Heimberger's van, Trooper Overly observed it make a marked lane violation before he initiated his stop.

{¶13} In this case, Schauber provided the dispatcher with her location and contact information, along with a description of Heimberger's vehicle and information relative to Heimberger's erratic driving. The record supports that Schauber was an identified citizen informant. Thus, we are able to attribute a higher degree of reliability to the information that she provided during her 911 call. (See generally, *Illinois v. Gates*, 462 U.S. 213, 233-234). Furthermore, upon responding to the dispatch report, Trooper Overly observed Schauber's vehicle behind the van driven by Heimberger. These facts provide credibility to Schauber's account and sufficient indicia of reliability to justify Trooper Overly's traffic stop. *See State v. Rapp*, 9th Dist. Wayne No. 12CA0062, 2013-Ohio-4408, ¶11. Thus, after reviewing the record, we conclude that Trooper Overly's stop of Heimberger occurred upon reasonable suspicion based upon the information provided by Schauber as well as *upon his own observations*. As such, Heimberger's third assignment of error is not well taken and overruled.

*Assignment of Error No. IV*

{¶14} In her fourth assignment of error, Heimberger contends that her statements (to Trooper Overly) regarding her use of medications should have been suppressed because they were gathered in violation of her Fifth Amendment rights. Specifically, Heimberger argues that because she was in the back seat of Trooper

Overly's patrol car when asked if she was taking any medications, she was subject to a custodial interrogation and should have been advised of her *Miranda* warnings.

*Standard of Review*

**{¶15}** A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. (*Id*.) When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. (*Id.*) With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710 (1997).

*Analysis*

**{¶16}** A defendant has the constitutional right against self-incrimination under both the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. In interpreting this right, it has been held that the state may not use statements stemming from a custodial interrogation of the

defendant unless it demonstrates the use of certain procedural safeguards to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436.

{¶17} The U.S. Supreme Court and the Supreme Court of Ohio have developed case law pertaining to *Miranda* warnings in the context of roadside traffic stops. In *Berkemer v. McCarty*, 468 U.S. 420, the U.S. Supreme Court held that roadside questioning of a motorist detained pursuant to a routine traffic stop did not constitute 'custodial interrogation' for purposes of the Miranda rule, so that pre-arrest statements a motorist made in answer to such questioning were admissible against the motorist. If that person "thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protection prescribed by *Miranda*." *Id.* at 440.

{¶18} Heimberger direct us to *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, in which the Ohio Supreme Court found the driver was "subjected to treatment" that rendered him in custody and entitled him to *Miranda* warnings. In *Farris*, after stopping a driver for speeding, the police officer noticed the odor of burnt marijuana coming from inside the car. The officer asked the driver to step out of the car, patted the driver down, and placed him in the front seat of the patrol car. Without providing *Miranda* warnings, the officer asked the driver about noticing the smell of marijuana and told him he was going to search the car. The driver then

admitted that a marijuana pipe was in a bag in the trunk. The Ohio Supreme Court held that "the officer's treatment of Farris after the original stop placed Farris in custody for practical purposes". *Id.* at ¶14. The Court, quoting *Berkemer*, held the only relevant inquiry in determining whether a person was in custody is "how a reasonable [person] in the suspect's position would have understood [their] situation". *Id.* The Court found that a reasonable person in Farris's position would have understood himself to be in custody of a police officer because the officer: patted Farris down; took Farris's car keys; instructed Farris to enter the cruiser; and told Farris he was going to search his car. *Id.* Thus, the Court held that the driver's pre-warning and post-warning statements were inadmissible.

{¶19} Comparing *Farris* to the case before us, we find *Farris* to be distinguishable because Heimberger was not "subjected to treatment" which a reasonable person would have understood to be in police custody. In the case *sub judice*, once Heimberger stepped out of her vehicle, Trooper Overly asked if he could pat her down (for officer safety) before placing her in the back seat of his patrol car. Then, before placing Hiemberger in his patrol car, Trooper Overly told Heimberger "have a seat in my patrol car so I can move your vehicle off the roadway". When placed into the patrol car, Heimberger was not handcuffed and was not under arrest. It is clear to us that Heimberger's placement in the patrol car

was for safety purposes under the facts presented. Accordingly, we find that Trooper Overly's questions and Heimberger's statements were made prior to being placed in custody.

{¶20} Furthermore, after Trooper Overly *Mirandized* Heimberger and placed her under arrest, the record reflects that Heimberger, on the drive to the jail, made multiple voluntary statements regarding her medications, thus limiting the claim that her prior statement (i.e. medications she had taken) should have been suppressed.

{¶21} As such, Heimberger's fourth assignment of error is not well taken and overruled.

*Assignment of Error Nos. I and II*

{¶22} We find Heimberger's first and second assignments of error to be interrelated and therefore, we will address them together.

{¶23} In her first and second assignments of error, Heimberger claims that the trial court improperly excluded the expert and lay testimony of her counselor. Heimberger asserts that she was deprived of offering evidence relating to her defense that she was suffering from a panic disorder that influenced her poor driving.

*Standard of Review*

**{¶24}** The decision to admit or exclude evidence is a matter that rests within the broad discretion of the trial court and its decision in such matters will not be disturbed by a reviewing court absent an abuse of discretion that has caused material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044. An abuse of discretion implies an "arbitrary, unreasonable, unconscionable" attitude on the part of the court. *State v. Adams*, 62 Ohio St.2d 151 (1980).

*Analysis*

**{¶25}** Here, Heimberger was charged with OVI and a marked lanes violation. As to her "panic attack" defense, the video of Heimberger's traffic stop reveals that after Trooper Overly stopped Heimberger, no mention was made that she was suffering from a panic attack. (*See generally*, Exhibit A). The only comments Heimberger made to Trooper Overly was that she was having trouble operating the van and that she could not see out her rear-view mirror. And at trial, when questioned as to whether she was anxious (at the time of the stop), Heimberger testified that she was no longer anxious because she was outside of the construction zone and was able to see better.

**{¶26}** Addressing the issue of the trial court's denial of the expert testimony of Heimberger's counselor, the record reflects (i.e. proffer of evidence) that such

evidence was underdeveloped and not relevant. In her proffered testimony, Christine Polak ("Polak"), Heimberger's counselor, testified that the counseling sessions (with Heimberger) occurred *after* the filing of charges and that Heimberger's recount (of her encounter with Trooper Overly) had some "red flags" as to whether or not she was having a panic attack. (Trial Tr. 87-89). And, on cross-examination, Polak testified that she was not sure whether Heimberger was having a panic attack at the time of the stop. (Trial Tr. at 90). Therefore, the basis of the "expert's" opinion was seemingly flawed and the trial court's decision not to permit such evidence to go before the jury was within its broad discretion.

{¶27} In analyzing the denial of Polak as a lay witness, Evid.R. 701, which governs opinion testimony by lay witnesses, provides:

> **"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."**

Consistent with Evid.R. 701, a lay witness may testify regarding another's demeanor or emotional state if the testimony is based upon personal observations and first-hand perceptions. *State v. Kovac*, 150 Ohio App.3d 676, 691, 2002-Ohio-6784. In the case *sub judice*, Polak did not personally observe Heimberger at the time of the stop. Polak was only privy to Heimberger's recollection of the stop

-14-

during subsequent counseling sessions. Therefore, after reviewing the record, we find the trial court did not abuse its discretion when barring Polak as a lay witness for foundational reasons.

{¶28} Since the record fails to reflect that the trial court abused its discretion when it excluded Polak's testimony, Heimberger's first and second assignments of error are overruled.

*Assignment of Error No. V*

{¶29} In her fifth assignment of error, Heimberger argues that her OVI conviction was against the manifest weight of the evidence.

*Standard of Review*

{¶30} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, " 'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of the witnesses and determine[ ] whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered' ". *State v. Thompkins*, 78 Ohio St.3d 380, at 387, (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175. A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10

Ohio St.2d 230 (1967), paragraph one of the syllabus. When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction', should an appellate court overturn the trial court's judgment. *State v. Huller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶119.

*Analysis*

**{¶31}** In this assignment of error, Heimberger challenges her OVI conviction under R.C. 4511.19(A)(1)(a). That statute provides, in relevant part: "No person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them". R.C. 4511.19(A)(1)(a). On appeal, Heimberger challenges the evidence presented by the State, claiming: that the caller/informant was prone to exaggeration; that Trooper Overly lacked evidence in finding Heimberger impaired; and that the evidence obtained while Trooper Overly was on the stand was presented by the prosecutor, not Trooper Overly.

**{¶32}** In our review of the evidence, the State called two witnesses at trial, Schauber, the citizen informant, and Trooper Overly. Schauber testified that on the morning of April 14, 2017, she was traveling northbound on U.S. 23, in the vicinity of the Delaware State Park, driving behind a U-Haul van. Schauber testified that

the van was "driving erratically and swerving all over the road, way far in the left, clear over into the grass, cutting in front of traffic on the right side, almost hit a semi. Cars were having to veer off so that they could be safe and get through." (Trial Tr. at 37). Schauber further testified, about driving behind Heimberger's van, "I was scared, when I called 9-1-1 I remember I was like 'she's gonna kill somebody'. So I wanted to get away from her but I was too scared to, like, if she was in the right lane I was too scared to go past her". (*Id.* at 38-39).

{¶33} The State also called Trooper Overly to the stand. Trooper Overly testified that he has been with the Ohio State Highway Patrol since 2011 and was trained in alcohol and drug detection and field sobriety testing. (*Id.* at 50-52). Trooper Overly testified that he was on duty the morning of April 14, 2017, and at approximately 10:50 a.m., he received a call from dispatch in reference to a U-Haul van (driven by Heimberger). (*Id.* at 54). Trooper Overly testified that he responded to the call and personally observed Heimberger's van weaving within its lane and cross the center line by approximately two feet. (*Id.* at 58). Trooper Overly stated at that point he activated his emergency lights and sirens and followed Heimberger for over two minutes before Heimberger finally pulled the van over and in doing so, blocked the left-hand lane of traffic. (*Id.* at 63).

{¶34} Trooper Overly testified that once he made contact with Heimberger, he observed her eyelids to be droopy and her speech was slowed and slurred. (*Id.* at 65). According to Trooper Overly, he requested Heimberger to step out of the U-Haul van and to sit in the back seat of his cruiser so that he could move the van from its stopped location to the right-side of the roadway for safety purposes. (*Id.* at 67-68).

{¶35} Trooper Overly further testified that, after moving the van but before administering field sobriety tests on Heimberger, he asked why she was driving erratically and inquired if she was taking any medications. Heimberger advised the trooper that she was on several different types of medications but only could recall Prozac and Xanax. Heimberger volunteered (to Trooper Overly) that her medications "make her dizzy, slows down her reaction time". (*Id.* at 72).

{¶36} Trooper Overly testified that he proceeded to administer several field sobriety tests on Heimberger, noting that she had extremely constricted pupils, which would indicate a possible sign of narcotic use. Trooper Overly also testified that he asked Heimberger if she had any recent head injuries or concussions, learning that Heimberger was in a car accident on April 3, 2017 and that because of the car accident, she takes Tramadol, (*Id.* at 73). Trooper Overly testified that Tramadol is a narcotic.

**{¶37}** Trooper Overly also identified State's Exhibit A, a video of his interactions with Heimberger at the scene. In the video, Trooper Overly asks Heimberger if she is able to complete some standardized field sobriety tests, i.e. the walk and turn test and the one leg stand test. During his instructions regarding the walk and turn test, Heimberger lost her balance several times and was weaving side to side. After his instructions, and after attempting to take a step, Heimberger advises Trooper Overly that she is unable to complete the test because it is hurting her back. (Trial Tr. at 77). The video reveals at this point that Trooper Overly stops the walk and turn test but does perform one last test, the Romberg test, which is a test to observe signs of drug impairment. During this test, Trooper Overly observed Heimberger swaying from side to side and also observed eyelid tremors, both signs of drug impairment.

**{¶38}** Heimberger took the stand in her own defense. She testified that on April 14, 2017 she was driving a U-Haul van from Columbus to Fostoria. She testified that while in Columbus, she encountered some road construction which made her anxious. However, when questioned as to whether she had difficulty driving the van outside of the construction zone, where Trooper Overly observed her, Heimberger stated "No, because I could see better on the road, so I could stay in my lane". (*Id*. at 135).

**{¶39}** Based on the foregoing testimony and the exhibits entered into evidence, we find the record contains competent and credible evidence to support the jury's finding of Heimberger guilty of OVI. The testimony provided by Schauber (that Heimberger was driving erratically and was weaving all over the road), of Trooper Overly's testimony (that Heimberger's speech was slowed and slurred, that her eyelids were droopy, and that he found indicators of drug impairment when administering field sobriety tests), together with Heimberger's admission of taking numerous medications was sufficient to gain a conviction for OVI. Moreover, the jury was "in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witness' testimony is credible". *State v. Miller*, 3d Dist. Seneca No. 13-12-52, 2013-Ohio-3194, ¶48, citing *State v. Thompson*, 3d Dist. Crawford No. 3-10-23, 2011-Ohio-3631, ¶31, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Because the jury was in the best position to resolve issues of credibility, and because evidence weighs in favor of the conviction, we cannot find that the jury "lost its way" and created such a manifest miscarriage of justice in convicting Heimberger of OVI. Thus, Heimberger's conviction was not against the manifest weight of the evidence and her fifth assignment of error is overruled.

{¶40} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the Appellant's conviction in the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**