[Cite as *State v. Goins*, 2019-Ohio-3135.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 18AP0046 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTOPHER L. GOINS | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2017 TR-C 006608 |

DECISION AND JOURNAL ENTRY

Dated: August 5, 2019

SCHAFER, Judge.

{¶1} Defendant-Appellant, Christopher Goins, appeals the decision of the Wayne County Municipal Court denying his motion to suppress. We affirm.

I.

{¶2} On July 1, 2017, at approximately 1:35 a.m., the Wayne County Communications Dispatch ("WCC") issued a dispatch to Dispatcher Lloyd of the Ohio State Highway Patrol. The WCC dispatch informed Dispatcher Lloyd that a citizen informant had called to report a possible intoxicated driver leaving the Econo Lodge in Wayne County and heading toward the city of Wooster in a green Ford truck. Dispatcher Lloyd relayed this information to Trooper Ondick who was on patrol in the area of the Econo Lodge. Trooper Ondick headed to the location he believed he would find the truck. Upon observing a green Ford F-150 in the vicinity, Trooper Ondick initiated a traffic stop of the vehicle. Mr. Goins was identified as the driver of the vehicle and was ultimately charged with operating a vehicle under the influence in violation of

R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(d). Mr. Goins entered a plea of not guilty and the matter proceeded through the pretrial process.

{¶3} Mr. Goins eventually filed a motion to suppress the evidence obtained as a result of the traffic stop, alleging that Trooper Ondick did not have reasonable suspicion to stop his vehicle. Following a hearing, the trial court issued a judgment entry determining that Trooper Ondick had reasonable suspicion to stop Mr. Goins' vehicle and that the State had sufficiently demonstrated that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity validating a brief stop of Mr. Goins' vehicle.

{¶4} Mr. Goins ultimately changed his plea to no contest. The trial court accepted his plea, found him guilty, and sentenced him to six months in jail and a ten-year license suspension. Mr. Goins thereafter filed this timely appeal, raising one assignment of error for our review.

II.

**Assignment of Error**

**The trial court erred by denying Mr. Goins' motion to suppress, as there was no reasonable suspicion to stop Mr. Goins' vehicle.**

{¶5} In his sole assignment of error, Mr. Goins raises two arguments.[1] Mr. Goins' arguments include the contention that the trial court erred when it denied his motion to suppress evidence because the trial court erred when it admitted the citizen informant's 9-1-1 call as evidence. Mr. Goins also argues that that the trial court erred when it denied his motion to suppress because (1) neither Trooper Ondick nor Dispatcher Lloyd had sufficient knowledge of the facts precipitating the stop; (2) the State did not present sufficient evidence to sustain the trial court's finding of reasonable suspicion; and (3) that even if "there was reasonable suspicion to

---

[1] Although App.R. 16(A) requires an appellant to separately argue each assignment of error, we elect to consider each of Mr. Goins' arguments.

stop the driver of the 'green Ford truck' described by the Wayne County Sheriff's Office, Trooper Ondick did not have reasonable suspicion that Mr. Goins' vehicle was the one that he was actually dispatched to locate." We disagree on all points.

## A. Authentication of 9-1-1 call

{¶6} A recording of the informant's 9-1-1 call was played in its entirety at the suppression hearing over Mr. Goins' objection. Mr. Goins contends, however, that because the 9-1-1 call was not properly authenticated, the trial court should not have considered it.

{¶7} The Supreme Court of Ohio has specifically held that "the Rules of Evidence do not apply to suppression hearings." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 17; *see U.S. v. Matlock*, 415 U.S. 164, 172-73 (1974) ("[T]he rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence."). Consequently, although certain evidence may be inadmissible at trial due to a failure to authenticate, a trial court has broad discretion pursuant to Evid.R. 101(C)(1) and 104(A) concerning what evidence to permit during a hearing on a pretrial motion to suppress. *In re C.R.*, 9th Dist. Medina No. 12CA0078-M, 2013-Ohio-1724, ¶ 24 (Whitmore, J. concurring in part, and dissenting in part), citing *Boczar* at ¶ 17 and Hagel, Thomas, *Anderson's Ohio Criminal Practice and Procedure*, Section 24A.501.1, 377 (11th Ed.2005). As this Court has recognized:

> Were it otherwise, the State would be required to try at least a portion of its case to procedural perfection twice; once at the suppression stage and once at the trial stage. Out of an abundance of caution, the State would have to procure the appearance of every declarant and every custodian at every suppression hearing only to recall the same witnesses for trial. The time and expense involved would be great. Moreover, such a requirement would conflict with certain practical realities and accepted legal principles. Search warrants are repeatedly issued on ex parte affidavits containing out-of-court statements of identified and unidentified persons. Additionally, absent a demonstrated need for disclosure, the State has a privilege to withhold from disclosure the identities of those who give information

to the police about crimes. The idea that a trial court may reject certain evidence at a suppression hearing strictly because it is hearsay or unauthenticated runs afoul of the foregoing principles.

(Internal quotations and citations omitted.) *In re C.R.* at ¶ 24.

{¶8} As it is well settled that "judicial officials at suppression hearings 'may rely on hearsay and other evidence, even though that evidence would not be admissible at trial[,]'" *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, ¶ 14, quoting *Maumee v. Weisner*, 87 Ohio St.3d 295, 298 (1999), we conclude that the trial court did not err when it admitted the citizen informant's 9-1-1 call.

## B. Reasonable Suspicion

{¶9} Mr. Goins next argues that the trial court erred when it determined Trooper Ondick had reasonable suspicion to stop his vehicle because the State failed to establish the facts precipitating the dispatch and failed to present any evidence to sustain a finding of reasonable suspicion.

{¶10} Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, an appellate court must accept a trial court's findings of fact when they are supported by competent, credible evidence. *Id*. However, accepting those facts as true, the appellate court must independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Burnside* at ¶ 8.

{¶11} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. The Supreme Court of the United States established the basic standard for reviewing the propriety of a traffic stop through its holdings in *Terry v. Ohio*, 392 U.S. 1 (1968), and *Delaware v. Prouse*, 440 U.S. 648 (1979). Under the standard articulated in these cases, "a law enforcement officer may stop a vehicle when the officer has a reasonable suspicion, based on specific and articulable facts, that an occupant is or has been engaged in criminal activity." *State v. Epling*, 105 Ohio App.3d 663, 664 (9th Dist.1995). "Reasonable suspicion is something less than probable cause." *Id.*, citing *State v. VanScoder*, 92 Ohio App.3d 853, 855 (9th Dist.1994). In addition, when "analyzing whether reasonable suspicion existed, this Court looks to the facts available to the officer at the moment of the seizure or the search and considers whether those facts would warrant a man of reasonable caution in the belief that the action taken was appropriate." (Internal citations and quotations omitted.) *State v. Blair*, 9th Dist. Summit No. 24208, 2008-Ohio-6257, ¶ 5. Reasonable suspicion is based on the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 417–418 (1981). "Under this analysis, 'both the content of information possessed by the police and its degree of reliability' are relevant to the court's determination." *Weisner*, 87 Ohio St.3d at 299, quoting *Alabama v. White*, 496 U.S. 325, 330 (1990).

{¶12} First, Mr. Goins argues that Trooper Ondick and Dispatcher Lloyd did not have the requisite knowledge of facts precipitating the dispatch. However, "[w]here an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that *the facts precipitating the dispatch* justified a reasonable suspicion of criminal

activity." (Emphasis added.) *Id.* at paragraph one of the syllabus. As the Supreme Court of Ohio specifically recognized in *Weisner*:

> The United States Supreme Court has reasoned * * * that the admissibility of the evidence uncovered during such a stop does not rest upon whether the officers *relying upon a dispatch or flyer* "were themselves aware of the specific facts which led their colleagues to seek their assistance." It turns instead upon "whether the officers who *issued* the flyer" or dispatch possessed reasonable suspicion to make the stop. (Emphasis *sic.*) [*United States v. Hensley*, 469 U.S. 221, 231 (1985)] (discussing and applying *Whiteley v. Warden, Wyoming State Penitentiary*, [401 U.S. 560 (1971)], to reasonable suspicion in the context of a police flyer). Thus, "[i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." *Hensley,* 469 U.S. at 232, 105 S.Ct. at 682, * * * .

*Weisner* at 297. Thus, the issue is whether the WCC dispatcher who issued the original dispatch possessed reasonable suspicion issuing the dispatch to make the stop and not whether Trooper Ondick or Dispatcher Lloyd had "the requisite knowledge of facts precipitating the dispatch" as advocated by Mr. Goins.

{¶13} Next, Mr. Goins argues that the State did not present sufficient evidence to sustain a finding of reasonable suspicion. In this case, Trooper Ondick testified that he stopped Mr. Goins' vehicle based on the citizen informant's call. Although the WCC dispatcher did not testify at the suppression hearing, the 9-1-1 call was admitted as evidence and a trial court may also consider the testimony of the officer who made the stop when assessing whether the facts known to the dispatcher were sufficient to justify the stop. *See id.* at 298. When the dispatch is based on information provided by an informant, "the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. * * * The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id.* at 299. Relevant factors include "the informant's veracity, reliability, and basis of knowledge." *Id.*, citing *White* at 328. Generally, an anonymous informant is

"comparatively unreliable," and a tip "will generally require independent police corroboration."

*Id.* at 300, citing *White* at 329.  On the other hand,

> an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: "[I]f an unquestionably honest citizen comes forward with a report of criminal activity— which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary."

*Id.*, quoting *Illinois v. Gates*, 462 U.S. 213, 233-234 (1983).

{¶14}  Trooper Ondick testified that he initiated the stop of Mr. Goins' vehicle based on information relayed to him via radio dispatch and his mobile data terminal.  Although the citizen informant did not testify at the suppression hearing, it is undisputed that he provided the WCC dispatcher with his name, present location, and contact information at the time he called 9-1-1.  The informant further identified himself as the front desk manager for the Econo Lodge and advised the WCC dispatcher that a patron at the Econo Lodge bar, driving a green Ford F-150 with a specific license plate number, "is so drunk, he can't even walk[,]" and that it would be "bad news" when the patron left the bar and got back into his truck.  Thus, the informant in this case was reporting information as he witnessed it and "[t]his immediacy lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory." *Weisner* at 302.  Moreover, the informant's motivation for reporting the events supports the reliability of his tip since it can be reasonably inferred that his motivation was based on his concern for other motorists and possibly the patron also. *See State v. Rapp*, 9th Dist. Wayne No. 12CA0062, 2013-Ohio-4408, ¶ 11, citing *Weisner* at 302.  "Because the tipster was an identified citizen informant, we may ascribe a high degree of reliability to the information that he provided, and it need not be supported by independent observations by [Trooper Ondick]." *State v. Woody*, 9th Dist. Lorain No. 14CA010679, 2016-Ohio-631, ¶ 11, citing *Weisner* at 300; *see Rapp* at ¶ 11,

citing *State v. Catanzarite*, 9th Dist. Summit No. 22212, 2005-Ohio-260, ¶ 15. Therefore, we conclude that based on the totality of the circumstances, the WCC dispatcher had a reasonable basis for issuing the dispatch in this case.

{¶15} As mentioned above, Trooper Ondick stated that he relied on the information relayed through the dispatch and his mobile data terminal. Although Trooper Ondick believed he had been given the license plate number of the green Ford truck, he stated he could not be certain because Dispatcher Lloyd was continuously giving him information while he attempted to locate the vehicle and he did not know when the information was entered. It is undisputed, however, that Dispatcher Lloyd advised him that a citizen had called to report a possible intoxicated driver leaving the Econo Lodge in a green Ford truck, and was possibly heading toward the City of Wooster. Trooper Ondick further testified that the information about the vehicle included that the truck was an older model and was a dark green and that he only came across one green Ford truck that evening—the truck driven by Mr. Goins.

{¶16} Although Trooper Ondick did not give an estimate of how long it took him to locate Mr. Goins' vehicle after receiving the dispatch and heading in the direction of the Econo Lodge, the trial court found that the distance from the Econo Lodge to the location where the vehicle was stopped appeared to be short. The trial court based this finding on the fact that the initial 9-1-1 call occurred around 1:35 a.m. and Mr. Goins' truck came into view on Trooper Ondick's dashcam at 1:44:43 a.m. A review of the record in this case shows that the trial court's findings were based on competent, credible evidence and, therefore, we must accept those findings of fact. *See Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665 at ¶ 100, citing *Mills*, 62 Ohio St.3d at 366.

{¶17} Upon review of the record in this case, we conclude that based on the totality of the circumstances, Trooper Ondick acted upon reasonable suspicion and that the investigative stop of Mr. Goins' vehicle was constitutionally valid.

{¶18} Therefore, the trial court did not err by overruling Mr. Goins' motion to suppress. Mr. Goins' assignment of error is overruled.

### III.

{¶19} Mr. Goins' sole assignment of error is overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.


APPEARANCES:

PATRICK L. BROWN, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.